JOSEPH WATT FUGATE *v.* STATE OF MISSISSIPPI.

1. CRIMINAL LAW.   *Jurors.   Competency.   Code* 1892, § 2355.

Under code 1892, § 2355, providing that any person otherwise competent who will make oath that he is impartial shall be competent as a juror in any criminal case, although he has an impression or opinion as to the guilt of the accused, if it appear to the court that he has no bias and no desire to reach any result except that to which the evidence may conduct, the oath of the proffered juror is not conclusive, nor is he the judge of his own competency.

2. SAME.

A person is not qualified as a juror:
   (*a*)  Who has an opinion about the case and cannot say positively that he can try the case as though he had none; or
   (*b*)  Who has an opinion about the case and from what he knows could bring in a verdict (other than one predicated of a want of further knowledge) without further evidence; or
   (*c*)  Who has an opinion about the case which it would require strong testimony to remove.

FROM the circuit court of Prentiss county.

HON. EUGENE O. SYKES, Judge.

Fugate, appellant, was indicted, tried and convicted of murder in the court below and appealed to the supreme court.   The facts upon which the decision is based are fully stated in the opinion of the court.

*J. M. Boone, B. A. Selman, Samuel P. Allen* and *Candler &
Candler,* for appellant.

If we are to stand by the splendid enunciation of Justice
Stockdale upon the subject of a fair and impartial trial, as de-
livered by him in the case of *Jeffries* v. *State,* 74 Miss., 675, in
which cause the disqualification of one juror was involved, then
it inevitably follows under the principles enunciated in that
case that where five jurors failed to measure up to the standard
as to impartiality required by law, the result can only be a re-
versal of the case.

In *Cannon* v. *State,* 57 Miss., 147, the expressions of the
juror was no stronger against the defendant than the statements
of these jurors. Undoubtedly the above jurors had prejudged
this case favorably to the defendant, and for that reason alone
a new trial was granted in the Cannon case.

In *Brown* v. *State,* 57 Miss., 431, this court, speaking through
Judge George, said: "The intention of the law is that the juror
shall come to the consideration of the case unaffected by any
previous judgment, opinion or bias, either as respects the parties
or the subject-matter in controversy." . . . This cannot be,
if a juror has a fixed and settled opinion on the subject-matter
in controversy, or as to so much of it as would materially affect
his judgment on the whole. As a general rule, the inquiry in a
criminal case is as to the state of the juror's mind on the ques-
tion of the guilt or innocence of the accused. If he has a fixed
opinion on the subject, he is excluded, because he goes into the
jury box with an opinion either for or against the prisoner,
which must, according to the laws of the human mind, operate
as a substitute for evidence. We know that, where a fixed
opinion is thus entertained, the natural tendency of the mind
is to seek for that in the evidence which will tend to confirm it,
and to weaken or explain away the evidence which is against
it. The mind is not, therefore, free to act on the evidence."
Tested by this rule, each of the five jurors were clearly in-
competent.

In *Mabry* v. *State,* 71 Miss., 721, the court pronounced the juror, Hyman, incompetent, because he had a fixed and definite opinion and would not say positively whether he could try the case as though he had no opinion.

It will be observed that most all of the jurors above complained of would not say positively whether or not they could give a fair and impartial trial, and would not say positively that their opinion would not embarrass them in rendering a verdict, and clearly, under the Mabry case, *supra,* all five of the jurors now under consideration were incompetent.

In the Klyce case, 79 Miss., 652, the court enforced the idea of liberal interpretation in favor of the accused, as shown in § 2355 of the code on this subject. In that case the court declined to hold a juror who had an opinion competent, merely because he stated he could try the case impartially, for the reason that the juror may so state and may think so, but it is for the court to say whether he in fact would so try the case, in the light of the weakness of human nature.

While it is true that the court in the Klyce case seems to base its reversal upon the fact that the juror heard the facts from the state witnesses, yet, it does not negative the idea that this opinion formed from talking to persons who talked with the state witnesses would not equally render the juror incompetent. The juror, Browning, in the case at bar, stated that parties who heard the witnesses testify in the court had told him of their statements. Several of the other jurors complained of stated that they did not know whether the parties who talked to them were witnesses or not, and for all we know, they might have been witnesses.

*William Williams,* attorney general, for appellee.

It is submitted that the jurors mentioned in the first, second, third, fourth, and fifth assignments of error, were competent jurors under the statute and adjudications of this court. Each and every one of them testified that he had no bias or feeling or

prejudice in the case, and no desire to reach any result in it, except that to which the evidence might conduct.

The competency of a juror is a matter that is left largely to the sound discretion of the trial judge. By reference to the record in this case and to Klyce's case, 79 Miss., 652, it will be seen that there is a wide difference between the two cases, in this: In Klyce's case the juror had heard the testimony from the state witnesses, and said that he had an opinion. His opinion was not based on rumor, as the opinion of the jurors referred to in the present assignment of error. The jurors mentioned in the assignments of error above referred to, said that they had an opinion, which was based upon rumor, but that it would readily yield to testimony in the case, and that the opinion they had would not in any way embarrass them after hearing the law and testimony in the case in rendering a verdict, and that they would feel free to sit in the jury box and render a fair and impartial trial.

The ruling of the trial court as to the competency of the above named jurors does not conflict with the holding of the court in Klyce's case.

Argued orally by *J. M. Boone,* for appellant, and by *William Williams,* attorney general, for appellee.

PRICE, J., delivered the opinion of the court.

The defendant was tried at the August term, 1902, of the circuit court of Prentiss county, for the murder of Ransom Cunningham, was convicted and sentenced to be hanged, and appeals to this court.

Assignments of error 1 to 5, inclusive, go to the competency of Jurors Randall, Kinard, Browning, Pinson and Waters. At the very threshold of this case we are met with the proposition, were the above-named jurors competent? If this question be decided in the negative, then it would be useless to notice any other of the numerous assignments of error. The proposed

Juror Randall, upon his *voir dire,* after stating that he had some
opinion of the guilt or innocence of the accused, and that it
would take evidence to remove it, was asked by defendant's coun-
sel: "If you heard no more facts about the case, you would be
prepared to decide the case as you now stand?" "Yes, sir."
Juror Kinard, upon his preliminary examination, after stating
that he had an opinion from what he had heard, was asked:
"If you were not told anything more about it, and the court
was to tell you to go out there and bring in your verdict,
could you go out there and pronounce him guilty or not guilty?"
"Yes, sir; I would think him guilty of the killing." By the
court: "Would that opinion, which you say is based on rumor,
embarrass you in any way when it came to rendering a verdict
in the case after hearing the testimony and the law?" "I think
not." The proposed juror Browning, on his examination, after
stating that he was in Booneville during the eight days the
*habeas corpus* trial was in progress, and was not around the
courtroom at the time, except two or three times, and that he
had formed an opinion from rumor of the guilt of the defendant,
was asked: "Were they discussing it with you and in your
presence?" "Sometimes it was being discussed with me." "They
would tell you the facts as they understood them?" "Yes, sir."
"Did you believe what they said about it?" "Yes, sir." "You
still have that opinion?" "Yes, sir." "Are you prepared, if
you heard no more about it, to render a verdict in this case?"
"I don't think I am." "Did these parties tell you what they
heard the witnesses say up here in the court house?" "Yes,
sir." "You say it would take evidence to remove that opinion
which you now have?" "Yes, sir." Juror Pinson, after stat-
ing that he had heard of the case, and heard people talk of it,
was asked: "Did what they told you make any impression on
your mind as to how the killing occurred?" "Yes, sir; it did
on one side." "Did it not impress you on the other side?"
"No, sir." "You formed your opinion from one side of the
question?" "Yes, sir." "You still have that opinion?" "Yes,

sir." "Would it take testimony to remove it?" "Yes, sir." "Pretty strong testimony?" "If I could hear the testimony, I could tell you more about that." "You would have to measure the weight of it yourself?" "Yes, sir." "Are you pretty well fixed about your opinion of things, when you hear statements—do you stand by your opinions pretty well?" "Yes, sir." "You are on one side of the case now?" "Yes, sir." "You don't know the people who are witnesses—are any who told you about it witnesses?" "No, sir." "Your mind is made up, and will stay that way until testimony changes you?" "Yes, sir." Juror Waters, upon his preliminary examination: "You have a decided opinion whether he is innocent or guilty of the charges, from what you have heard about the case?" "I can't say whether I have or not; I just have a firm opinion." "You have a firm opinion on one side of the case now?" "Yes, sir." "It would take plain and positive testimony to remove that opinion?" "Yes, sir." "Your opinion is such that slight evidence would not remove that opinion?" "No, sir." "It would take pretty strong evidence to remove that opinion." "Yes, sir." Each of the proposed jurors was asked by the court: "If, notwithstanding you have an opinion in the case, would that opinion embarrass you in any way if you were permitted to sit in the jury box?" and they answered "No"; each disclaiming bias, and saying they were impartial. The court pronounced each of said jurors competent, over the defendant's exception, and they were challenged by the defendant peremptorily, and the twelve challenges allowed defendant were exhausted.

Section 2355 of the code of 1892 does not mean that the mere fact that a proposed juror makes oath that he is impartial shall be conclusive of that fact. That section was intended to prevent the exclusion of a proposed juror on the mere ground that he had an impression or an opinion. Having such impression or opinion, he should not be summarily excluded, if he would make oath that he was impartial. But, the oath made, it is at last, by the statute, referred to the judgment of the circuit

judge whether the juror is in truth and fact impartial, as to which the circuit judge will determine from all the evidence addressed to that point. He may, from all the evidence, hold him impartial, though he has an impression or an opinion. These opinions or impressions producing no fixed conclusion, leaving the proposed juror without bias of feeling or prejudice, and with the desire to reach only the result to which the evidence should conduct, are not enough to disqualify. But a settled opinion arising from rumor, from discussing the facts of the case with others, from hearing the witnesses' account of the testimony, and not knowing whether such proposed juror could ignore his opinion, being on one side of the case, with convictions that would require strong and positive evidence to remove, does disqualify a proposed juror. Most men, upon being asked by the trial judge, would answer that they could try a case impartially, notwithstanding an opinion. Few would answer— though, unconsciously to them the fact might be—that they had a desire to reach a verdict to which the evidence did not conduct, although their minds were so fixed, biased, or prejudiced as to easily reach a verdict to which the evidence did not logically conduct. Such is the constitution of the human mind, such the frailty and imperfection of human nature, that one could hardly be expected to declare himself controlled by bias or prejudice when under oath. And perhaps the more honest the man, the more solemnly would he assert his freedom from both. It is for the circuit judge, in view of all the evidence, knowing the tendency of human nature, to satisfy himself, in the language of the statute, that the proposed juror is impartial. He must be satisfied. He should not, in the case of doubtfully balanced competency, give the state the benefit of the doubt. It is his duty to see that a fair, competent, and impartial jury is selected to try every case.

In this case there was manifest hesitancy and distrust displayed on the part of some of the proposed jurors themselves. The law and the evidence would have effect upon such jurors.

How much—just some, or controlling effect? If a juror has an opinion, and will not say positively that he could try the case as though he had none, he is not a competent juror. As said by this court, speaking through Justice Stockdale, in *Jeffries* v. *State,* 74 Miss., 677; 21 South., 526, it would be placing too low an estimate upon the lawmaking power to say that it intended to remove or infringe upon the safeguards of the lives and liberties of the people, to authorize the trial of one charged with crime by a partial or prejudiced jury; jurors with convictions so strong as to enable them to bring in a verdict without other evidence, or with an opinion that would require strong and positive evidence to remove it, especially when the law is that the evidence should be so cogent and conclusive as to exclude from the mind of the jury every reasonable doubt of guilt. The defendant is never called upon to produce strong evidence of his innocence, but he has answered the law's demands when there arises out of the evidence, or from lack of evidence, a reasonable doubt of his guilt.

As we answer the proposition proposed in the negative, it becomes unnecessary for us to notice any other of the twenty-four errors assigned.

*The judgment of the lower court is reversed, and the cause is remanded.*