## JAMES DIXON *v.* STATE.

[58 South. 5.]

CRIMINAL LAW. *Disqualified jurors. Reversible error.*

Where a defendant on trial for crime uses every peremptory challenge allowed him by law, it is fatal error for the court to overrule his challenge of disqualified jurors for cause.

APPEAL from the circuit court of Yazoo county.

HON. W. A. HENRY, Judge.

James Dixon was convicted of manslaughter and appeals.

The facts are sufficiently stated in the opinion of the court.

*Holmes & Holmes,* for appellant, filed an elaborate brief, too long for publication, contending that under the evidence in this case appellant should have been granted a change of venue and that the lower court erred in not sustaining appellant's challenge of jurors for cause after his peremptory challenges had been exhausted. *Peoples* v. *Yoakum,* 53 Cal. 571; *Safford* v. *State,* 76 Miss. 258; *Tennison* v. *State,* 79 Miss. 708; *Brown* v. *State,* 83 Miss. 645; *Anderson* v. *State,* 46 So. 65; *Fugate* v. *State,* 82 Miss. 195; *Murphy* v. *State,* 92 Miss. 203; *Jeffries* v. *State,* 74 Miss. 677.

*Jas. R. McDowell,* assistant attorney-general, for appellee.

Under our constitution, every person charged with crime is entitled to a fair and impartial trial. Jurors should not only be competent, but fair and impartial. However, the fact that a juror had heard the case discussed or has formed an opinion, does not necessarily

disqualify him. Section 2685, of the Code of 1906, is as follows:

"Any person, otherwise competent, who will make oath that he is impartial in the case, shall be competent as a juror in any criminal case, notwithstanding the fact that he has an impression or an opinion, as to the guilt or innocence of the accused, if it appear to the satisfaction of the court that he has no bias, or feeling, or prejudice in the case, and no desire to reach any result in it, except that to which the evidence may conduct; but any juror shall be excluded, if the court be of opinion that he cannot try the case impartially, and the exclusion shall not be assignable for error."

To a large measure the qualifications of a juror under this section are left to the sound discretion and good judgment of the trial judge, subject of course to review by the highest tribunal.

Before going into the testimony of the jurors on their *voir dire* examination in the instant case, I will call attention to a few cases decided by our court where jurors were held to be competent, even though they had heard much of the cases, and had formed opinions.

In *Green* v. *State,* 72 Miss. 522, our court held, speaking through Chief Justice Cooper, said that:

"Under said statute one is not incompetent as a juror merely because, on his *voir dire,* he states that he lives in the immediate neighborhood where the crime was committed, had heard it discussed, and had formed an opinion as to the guilt or the innocence of the accused of such a fixed character that it would require evidence to remove it, provided that he makes oath that he can try the case fairly and impartially, according to the evidence."

In *Gammons* v. *State,* 85 Miss. 103, the Green case was approved. In a very exhaustive opinion written by Judge Truly, and I ask a careful reading of Judge Truly's opinion as it goes into the testimony taken on

the *voir dire* examination, and in my opinion, the jurors in the case at bar are qualified according to the announcement in the *Gammons* case.

The court recently through Commissioner McLain approved the *Green case, supra,* in the case of *Whitehead v. State,* 52 So. .259.

And the court speaking through Judge Mayes, has recently approved, the *Gammons case, supra,* in the case of *Cook* v. *State,* 43 So. 618. See syllabus No. 7, and the exhaustive opinion of Judge Mayes, and authorities there cited.

The *Gammons* case was again approved in the *Evans case,* 40 South. 8.

It was held in *Helm* v. *State,* 67 Miss. 562, that:

"One who has no hostility to the accused, and who is not shown to be biased by a preconceived opinion as to render him incompetent as a juror, is not disquailfied, though he may have a bad opinion of the defendant's character."

It will thus be seen that our courts lay down a doctrine which must set a high standard for jury service. It has been a matter of favorable comment all over the country that in Mississippi one does not have to be a fool to do jury service. Any juror who can read vivid accounts of a homicide, and hear it discussed on the streets, and then swear that he has no opinion, is either a knave or a fool. Our legislature recognized the desirability of having good men on the jury, and therefore enacted the statute which provides that an opinion formed or expressed will not disqualify one for jury service, if the court is of opinion, by his answers to questions, that he will be fair and impartial, and if he swears that he will. I believe that a court of review should scrutinize the testimony of jurors with great care so that a fair and impartial jury guaranteed by the constitution, will be had in fact. But I submit in the case at bar that every single one of the men who sat upon this jury come clearly

within the qualifications laid down in the Green case, and followed many times since by our court.

The defendant exhausted all of his peremptory challenges and was allowed one additional challenge, which he also took advantage of, and exhausted.

Argued orally by *J. G. Holmes,* for appellant.

Argued orally by *Jas. R. DcDowell,* assistant attorney-general, for state.

Mayes, C. J., delivered the opinion of the court.

After a most thorough examination of this record, it is our view that the jurors Cheatham, Wilson, Childress, and Pierce were disqualified as jurors, and the trial court should have sustained the challenge for cause. Every peremptory challenge allowed appellant under the law was used, and therefore the failure on the part of the court to sutain the challenge for cause of any one of these jurors was fatal error. Nothing is to be gained by setting out in full the questions and answers of the jurors above specified. The answers were frank and fair, but clearly show disqualification. Questions of this character largely depend upon the facts of each particular case. *Murphy* v. *State,* 92 Miss. 203, 45 South. 865. This case is controlled by the cases of *Jeffries* v. *State,* 74 Miss. 675, 21 South. 526, *Fugate* v. *State,* 82 Miss. 189, 33 South. 942, and *Murphy* v. *State,* 92 Miss. 203, 45 South. 865, and cases cited in above opinions.

In reversing this case, we deem it proper to say that, in the light of the whole record, the trial court should grant a change of venue, if asked, when the case comes on for trial again.

*Reversed and remanded.*

McLean, J. (specially concurring). The record in this case is a striking illustration that "truth is stranger than fiction," and "how unsearchable are the judgments

of God, and His ways are past finding out." The appellant, during a drunken debauch, being tanked up on "blind tiger" liquor, and meeting an old negro man, pulled out his pistol and said to him, "Old nigger, you don't think I'll shoot," and the negro replied, "Yes, white man; I know you will, if you say so;" and appellant, repeating this once or twice, pointed the pistol towards the ground, somewhat to the side of the negro, and pulled the trigger. The pistol fired, the ball probably striking a tin can, or some other hard substance, ricochetted, and just at that moment a young lady stepping out upon the gallery of a nearby house, was struck in the forehead by this glancing ball, and instantly killed. The appellant was unpopular, with scarcely any friends, and without influence, brought about, no doubt, by the demoralizing use of liquor. The appellant went home without knowing that he had injured any one, and when the officer arrested him, which was a very short time thereafter, the appellant was found in a drunken stupor. The father of this young lady was influential and popular, a gentleman of culture, and a prominent office holder of his county. It is gleaned from the record that his daughter, who met her sad and untimely death by this stray bullet, was beautiful, accomplished, and refined, a favorite in her community, and, standing upon the very threshold of her young womanhood, with all the freshness and fragrance of youth around her, there were many rainbows in her sky and fancy colored every object with its gorgeous tint. The news of this tragedy quickly spread. The newspapers of the county appeared with sensational headlines and inflammatory editorials, not only condemning the crime, but called down the most direful punishment upon the head of this rowdy, drunken defendant. The inevitable result followed. The community, and we may add justly so, was stirred with indignation to its profoundest depths. Threats of lynching and mob violence were heard to such an extent that

the deputy sheriff, being apprehensive that his prisoner would be taken from jail and mobbed, thought it advisable to carry the appellant, for safe-keeping, to an adjoining county. Within two or three months thereafter the grand jury assembled, and very promptly returned an indictment, charging appellant with murder. A motion for a change of venue was made by defendant, upon the ground that, owing to the state and condition of the public mind and the undue prejudice existing against him, he could not secure in that county a fair and impartial trial. This motion was overruled, and the defendant forced to trial for his life. The court went through the solemn form of trying this man for murder, when there was not one element of murder in the case. He was convicted of manslaughter, and sentenced to the penitentiary for ten years. This is a tragedy, and this the scene.

Without going into a discussion of the evidence produced on the motion for a new trial, it is sufficient to say that, under the circumstances, it was practically impossible for this defendant to have obtained what the law regards as a fair and impartial trial, and the motion for a change of venue should have been sustained. Before the jury was secured the appellant had exhausted his peremptory challenges, and there were forced upon him some three, and perhaps four, jurors who were permitted to sit upon the jury over the protest of the defendant. These jurors stated upon their *voir dire* that they had a fixed opinion, that it would require evidence to remove this opinion, and that, if they were called upon to pass upon the case without any evidence, their minds were in a condition to then return a verdict. These jurors were perfectly honest and frank in their statements, stating that they did not consider themselves competent jurors, but that they would return a verdict according to the law and the evidence. To try any man with a jury composed of men who have formed such an opinion

is in the eye of the law no trial. It is more of a form than a trial; and, no matter how guilty a person is, he cannot be considered guilty unless he has been tried and convicted according to the rules of law. Every one, regardless of station or circumstances, regardless of the crime charged, is entitled to a fair and impartial trial. The Constitution so declares. Every principle of justice and right so proclaims. The law is blind. It does not and cannot see any distinction between the influential and the lowly, between the popular and the unpopular, between wealth and poverty, between strength and weakness, between the master and the servant, between the white and the black, but, like the sunshine from heaven, sheds its radiance upon all alike, and beneath its protecting aegis all can gather when the storms of passion, prejudice, and indignation arise, causing reason to desert its post and mania to seize the helm; in fact, to try one at such a time and place and by such a jury destroys the very palladium of the rights and privileges of the American citizen.