BOWEN KLYCE *v.* STATE OF MISSISSIPPI.

1. CRIMINAL LAW. *Juror. Competency. Opinion. Constitution* 1890, *sec.* 26. *Code* 1982, § 2355.

A venireman who testifies on his *voir dire* that he had heard witnesses for the state talk about the case, and believes what they told him, and has formed and expressed an opinion, which he still retains, and which, he supposes, would require testimony to remove, is incompetent as a juror, under the constitution of 1890, sec. 26, guaranteeing a trial by an impartial jury, although he further testify that what he had heard will not prevent him from rendering a fair and impartial verdict; and such a venireman is not within code 1892, § 2355, providing that any person, otherwise competent, who will make oath that he is impartial, shall be competent as a juror in a crimnal case, though he has an impression or opinion as to the guilt of the accused, if he has no bias or prejudice, and no desire to reach any result except that to which the evidence may conduct.

2. SAME. *Peremptory, challenges. Appeal.*

A defendant, who at the trial exhausted his peremptory challenges, may, on appeal, predicate error of the action of the court below in wrongfully denying his challenge for cause of a proffered juror whom he afterwards peremptorily challenged.

FROM the circuit court of Alcorn county.

HON. EUGENE O. SYKES, Judge.

The appellant, Klyce, was indicted for the murder of one Elmer McAfee. On his first trial he was convicted of manslaughter and appealed to the supreme court. This conviction was reversed and a new trial granted by the supreme court. *Klyce v. State,* 78 Miss., 450. The case having been remanded to the court below, a second trial was had, resulting again in appellant's conviction of manslaughter, from which this appeal was prosecuted to the supreme court. In the course of impaneling the jury on the second trial a full panel was tendered to

defendant, and the following examination of one Raper, a member of the panel, followed :*

By Mr. Lamb, defendant's attorney.

Q. Mr. Raper, where do you live? A. I live at Jacinto. Q. Where were you living when this killing took place? A. At Kendrick. Q. How far did you live at that time from Jeff McAfee? A. I suppose, about four or four and a half miles. Q. Have you ever heard anybody talk about this case. A. Yes, sir. Q. Have you heard any of the witnesses talk about this case? A. Yes, sir. Q. Have you heard the witnesses testify or tell what they would testify to about how this killing took place? A. I heard some of them talking about it. Q. Telling about what the facts were about the killing? A. Not in court, but outside. Q. Who did you hear talking about it? A. I heard Mr. John Lamb, for one. Q. Who else? A. I don't know whether I can tell any other witness' name. Q. Did you hear Eli and Sydney Whitehurst talking about it? A. I don't think I ever did. Q. From what you heard, did you form and express an opinion? A. I have formed and expressed an opinion, I suppose. Q. Is John Lamb one of the witnesses for the state? A. Yes, sir.

By the court: Q. You say you know you have formed an opinion—have you expressed it or not? A. Yes, sir; I think I have expressed it. Q. Notwithstanding you have and expressed an opinion, could you go into the jury box and give the defendant a fair and impartial trial? A. Yes, sir. Q. Notwithstanding the fact that you have formed and expressed an opinion, would that opinion readily yield to the testimony in the case? A. Yes, sir. Q. Have you any bias or prejudice against the defendant? A. No, sir. Q. Or against the state? A. No, sir. Q. Or for the state? A. No, sir. Q. Do you know any reason, after hearing the testimony and the law as given by the court, that would prevent you from rendering a fair and impartial verdict? A. No, sir, nothing at all, except what I

*The entire examination of this juror is reported by request of the court.

stated—that I have heard rumor, and some of the state wit-
nesses talk about the case. Q. Would that prevent you from
rendering a fair and impartial verdict after hearing the testi-
mony and the law? A. No, sir; it would not.

By Mr. Lamb, attorney for defendant: Q. When John Lamb
was talking to you about the facts in this case, did you believe
what he said? A. Yes, sir; I believed that that was what he
testified to about it in the court. Q. And what he would tes-
tify? A. Yes, sir. Q. From what he told you, is that from
what you formed an opinion? A. Well, not within itself. I
heard others speak about it. From that and from what I have
heard others say about it. Q. Is that opinion a fixed opinion,
that would require testimony to remove. A. Well, that
was my opinion about it. Of course, I had formed an
opinion; but, as I said, law and testimony would have effect on
my deciding the case. Q. That opinion you formed from what
John Lamb told you and from others—would it take testimony
to remove that opinion? A. Well, I don't know, hardly, how
to answer that question. Q. Would it require testimony to make
you change that opinion? A. I have that opinion. Q. Would
it take testimony to change that opinion? A. I suppose so. I
just formed the opinion from what I heard of it, and I suppose
that was the way. I believed it, from what I heard of it, and I
suppose it would. My opinion is not a fixed opinion, so far as
giving in a verdict. Q. You say it would take testimony to
change the opinion you formed from what you heard John
Lamb and others state? A. I suppose it would.

The defense here challenged Mr. Raper for cause. The court
held the juror competent, to which defendant excepted. The de-
fendant exhausted his peremptory challenges, so challenging
Raper, who did not serve on the jury.

*Lamb & Kier,* for appellant.

The trial court erred in overruling appellant's motion to ex-
cuse juror Raper from service in the case. The testimony shows

he had heard from others, he had formed an opinion, and it was that Raper had heard some of the witnesses discuss the facts in the case, and from what he had heard them say and from what a fixed opinion, as to the guilt or innocence of the appellant. Raper said he had an opinion, and it would take testimony to remove it. Raper was not a fair and impartial juror, such as the law entitles the accused to have when put on trial, and should have been excluded. *Mabry* v. *State,* 71 Miss., 716; *Jeffries* v. *State,* 74 Miss., 675; *Brown* v. *State,* 57 Miss., 424; *Cannon* v. *State,* 57 Miss., 147.

*Monroe McClurg,* attorney-general, for appellee.

The exception grounded upon the action of the court in pronouncing Raper a competent juror is not well taken. Code 1892, § 2355; Green's case, 72 Miss., Burgess' case, 1 L. R. A., 808 (814-816); Gorlitz's case, 4 L. R. A., 601 (603 *et seq*).

It is not enough that appellant was compelled to challenge Raper peremptorily and in doing so exhausted his right to such challenges, even though the court ruled wrong. The better rule is that he must show that the loss of the peremptory challenge compelled him to take objectionable jurors in their places, or that some substantial injury was done him. It is not overlooked that this announcement is in apparent conflict with the opinion of this court in *Hubbard* v. *Rutledge,* 57 Miss., 7, and Nail's case, 70 Miss., 32. It is not disclosed in these cases whether it was shown that an objectionable juror had to be accepted, or that injury was done by the ruling. However, it is respectfully urged that the true rule is as above stated. The law will not presume prejudice done the accused by such ruling. Thompson & Merriam on Juries, sec. 276 (4), and notes.

Argued orally by *W. J. Lamb,* for appellant, and by *Monroe McClurg,* attorney-general, for appellee.

CALHOON, J., delivered the opinion of the court.

Was Mr. Reper properly adjudged competent as a juror?· On his *voir dire* he said he had heard state witnesses give their version of the facts of the homicide in conversations outside of the court-room, that he believed what they said, and that from their statements he had formed and expressed an opinion.   On examination by the court he said that, notwithstanding he had formed and expressed an opinion, it would readily yield to evidence, and that he had no bias or prejudice for or against the defendant or the state.   He was then asked by the court this question: "Do you know any reason, after hearing the testimony and the law as given to you by the court, that would prevent you from rendering a fair and impartial verdict?"   His answer was: "No, sir; nothing at all, except what I stated—that I had heard rumor, and some of the state witnesses talk about the case."   He then, answering another question, as to whether that would "prevent him from rendering a fair and impartial verdict after hearing the testimony and the law," said it would not.   On examination by counsel for defense he said he believed what the witness told him about the facts, and from that, and what he had "heard others speak about it," he had formed his opinion. He was then asked if that was a fixed opinion, which would require testimony to remove, and he answered: "Well, that was my opinion about it.   Of course, I had formed an opinion; but, as I said, law and testimony would have effect on my deciding the case."   Asked then, "Would it require testimony to make you change that opinion?" he answered, "I have that opinion." Asked then, "Would it take testimony to remove that opinion?" he answered, "I suppose so.   I just formed the opinion from what I heard of it, and I suppose that was the way.   I believe it, from what I heard of it, and I suppose it would.   My opinion is not a fixed opinion, so far as giving in a verdict."   We dissent, with great diffidence, from the opinion of the very able judge who presided, that this person was a competent juror, not to be challenged for cause.   We are sure he will concur with

us that no person would think that juror impartial if it concerned his life or liberty, and this is no bad test. It is true, the ruling made can find support in certain loose expressions in some of the opinions of some courts; but we have been cited to no case, nor have we found any, where a juror was declared competent under facts like those here. Section 26 of our constitution guarantees a trial "by an impartial jury of the county where the offense was committed." This guaranty to each and every citizen by the fundamental law is, of course, sacred ground—the holy of holies—not to be invaded by the tread of legislatures or courts. It was a very wise and enlightened provision, and far more important of enforcement than avoiding any inconveniences and difficulties arising out of the notoriety of particular cases. Nevertheless, the tendency of human nature to burst through fundamental restrictions when at all irksome in the special instance has caused the courts to verge on invasion of this and many other wholesome constitutional reservations. It is well to fix, if it can be done, a boundary. In the present state of the authorities it is not easy for a trial judge, in the rapid movement of business before him, with no crystallized record on his desk, to determine limits, with no time for painstaking deliberation. Our own legislature, in § 2355 of the code, has gone to the very extreme length of the lawmaking power. That section is as follows: "Any person, otherwise competent, who will make oath that he is impartial in the case, shall be competent as a juror in any criminal case, notwithstanding the fact that he has an impression or an opinion as to the guilt or innocence of the accused, if it appear to the satisfaction of the court that he has no bias of feeling or prejudice in the case, and no desire to reach any result in it, except that to which the evidence may conduct; but any juror shall be excluded, if the court be of opinion that he cannot try the case impartially, and the exclusion shall not be assignable for error." This section is constitutional, but it manifestly not only does not hamper the court in determining for itself the question of the

impartiality of the person tendered as a juror, but, on the contrary, throws the onus on the court, in the exercise of its enlightened discretion, to decide whether or not the person tendered can "try the case impartially." It is also careful to provide that the exclusion of a juror "shall not be assignable for error," thus emphasizing the idea of liberal interpretation in favor of the accused. Nor does the section necessarily imply that a man is competent who has an opinion. It simply uses the words "impression or opinion." The collocation is significant, in view of the antecedent law as announced by the courts, many of which had gone nearly or quite to the length of this statute. But the statute leaves it to the trial court to exclude any juror it may think not impartial, whether from impression or opinion, without liability to question. It would nullify the constitutional provision, and seriously endanger the fairness of trials, to hold a juror who has an opinion competent merely because he says he could try the case impartially. He may say so and may think so, but it is for the court to say whether he in fact can, viewed in the light of the weakness of human nature. We are constrained to think that a man who has heard the facts from the state witnesses, believes what they told him, and from that has formed and expressed an opinion, which he still retains, is not an impartial juror, in the meaning of the constitution, whatever may be his own idea of his power to try impartially. We hold this, and nothing more, and think it will not require much psychological investigation to sustain this conclusion.

Appellant exhausted his peremptory challenges, and is in position to complain.

*Reversed and remanded.*

TERRAL, J., does not concur.