## FRANK SHEPPRIE v. STATE OF MISSISSIPPI.

1. CRIMINAL LAW. *Jury.* *Code* 1892, § 2355. *Constitution* 1890, *sec.* 26.

   A juror in a criminal case who, before the trial, heard all the facts of the case from an eye-witness, whom he regarded as truthful, whose statements he believed, and on them had formed a fixed opinion, is incompetent under constitution 1890, sec. 26, securing to an accused a trial by an impartial jury, and is not within code 1892, § 2355, providing that any person otherwise competent, who will make oath that he·is impartial in the case. shall be competent as a juror, notwithstanding he may have an opinion or impression of the guilt or innocence of the accused, etc.

2. SAME. *Juror concealing facts on voir dire. New trial.*

   If a juror, on his *voir dire*, conceal facts which render him incompetent, and serve upon the jury, a verdict of conviction will be set aside and a new trial granted.

FROM the circuit court of Leflore county.

HON. FRANK E. LARKIN, Judge.

Shepprie, the appellant, was indicted, tried, and convicted of the murder of one Beatrice Peables, and was sentenced to suffer death. He appealed from the conviction and sentence to the supreme court.

A motion for a new trial was made by defendant, in which he set up, with other grounds, the disqualification of certain jurors, among them Juror Johnson, on account of the fixed opinion, entertained by the juror when he was empanelled, of the guilt of defendant, which opinion was unknown to defendant or his counsel until after the rendition of the verdict in the case. In support of this motion a number of witnesses were introduced, three of whom testified that they had heard Johnson say, before the trial, that defendant ought to be hung. It was also shown by the evidence that Johnson was

boarding at the same place as one of the state witnesses, which witness saw the homicide committed, and that said witness had told Johnson all about the killing. The motion for a new trial was overruled, and, among other grounds of error assigned in the supreme court, appellant insisted that the court below erred in overruling his motion for a new trial, and in not granting it, because of the incompetency of said juror.

*J. A. P. Campbell,* for appellant.

I confine my observations to the disqualification of the juror, Johnson, because it is not claimed that the appellant, or counsel, had any intimation of his hostility until after the verdict. That he was an unfit juror is made clear by the evidence, and while he sought to vindicate himself, he only did what most men would do under like circumstances. That he was not frank and candid on his *voir dire*—that he misled court and counsel is certain. True, he said he had an opinion, which testimony could remove, and could try the case impartially, but it was not disclosed then that he had learned of the killing from his friend, McElroy, the only white person present, who had told him all about it, and "fixed" his opinion, and appeared as a witness to confirm the opinion formed by Johnson from his narrative of the affair. Nor did it appear, until the hearing of the motion for a new trial, that Johnson had, on the evening before the trial, stated his opinion that the prisoner should be hanged, and that in the courthouse, before the impaneling of the jury, he had expressed a like opinion, a fact not denied by him in his testimony, while he does deny the allegation that on Sunday evening he had expressed the opinion sworn to by several witnesses. He first denied that he had learned of the killing from McElroy, and then had it "pulled out of him" that McElroy had told him all about the killing.

One thing is certain, viz., that the examination of Johnson on his *voir dire* by the court was very meager and insufficient, and that court and counsel were misled as to Johnson, and that

a frank disclosure of his real mental state would have caused him to be set aside.

Before the code of 1880, it was settled that an opinion, requiring testimony to remove it, disqualified a juror. To afford opportunity to get intelligent jurors, the provision as to competency of jurors was introduced into that code, and is still the law. It goes to the farthest allowable limit of the constitution as to impartial jurors. It is still the right of the accused to be tried by an impartial jury. The merely having an opinion does not disqualify, if the fact that he has no bias shall "appear to the satisfaction of the court." This involves a thorough examination by the court, to have it placed beyond doubt that a juror who has an opinion is perfectly impartial. It is the right of the accused to be tried by twelve men who are impartial. It is the duty of the court to see to it that this right is not infringed. It should be clear that all of the panel are above exception. The court should not be content with the declaration of a juror, who says he has an opinion, that he can try the case impartially. It depends very much on circumstances whether having an opinion does not preclude the possibility of impartiality. What sort of an opinion, how derived, by whom informed, how fully, how confident of the accuracy of the opinion, etc. Having an opinion, it must appear to the court that, notwithstanding that, the juror is impartial. That involves careful investigation by the court into every circumstance, and obtaining a result, making it appear to the satisfaction of the court that absolute impartiality exists. The mere fact that a juror has talked with a witness does not disqualify, if no opinion was formed, as held in Penn's case, 62 Miss., 450. Each case depends on its circumstances. If it is not certain that the juror can try the case impartially, he is incompetent. Mabry's case, 71 Miss., 716.

The having an opinion from mere rumor or neighborhood talk, where the juror swears he can try the case impartially, and nothing suggests the contrary, does not disqualify, as in the case

of *Green* v. *State,* 72 Miss., 522. For, in such case, it may be said to appear to the satisfaction of the court that the juror is impartial, and the constitutional mandate for an impartial jury is satisfied. I hold it to be doubtful, if any man, who has learned of a homicide from an eye-witness, with full opportunity to know all about it, and who has full faith in the witness, and whose opinion is thus formed and fixed, can be said to be impartial, no matter how confidently he may affirm his ability to try the case impartially; and when in such case the witness, whose information had fixed the opinion of the juror, appears and affirms on the witness-stand what had fixed the juror's opinion, and his testimony is uncontradicted, it must be that the juror acts in virtue of the fixed opinion he had before. It is questionable whether the statute admits of the interpretation that a·"fixed opinion" does not disqualify. Its language is "impression or opinion," thus suggesting an opinion which differs little from a mere impression. It does not say a fixed opinion, and surely does not mean an opinion made up, fixed, matured from a narrative of a trusted friend, who saw the homicide, and told the particulars of it, and obtained full credit as to the truth of his statement. The statute designs to arm the court with power to declare competent a juror who had such "impression or opinion" as the court should be satisfied, on a thorough investigation of all the circumstances of the formation and strength of that opinion, would not influence the juror in rendering a verdict, and that the court might be free to solve the doubt in favor of exclusion, that is declared no cause for exception.

This cause is a stronger one for reversal than *Jeffries* v. *State,* 74 Miss., 675. It is much like that, and I invoke that as decisive of this.

It seems to me that, where a full examination is made in forming the jury and the record shows the examination, and from this the court is able to conclude that the juror was impartial and unbiased, although he had an opinion or impression, a much

stronger case is made against sustaining a challenge than where
a juror misleads court and counsel as to the state of his mind,
and it is after verdict discovered and put beyond doubt that the
juror had a fixed opinion, strong in character, and influential
upon him, formed in such way as not to be easily changed. And
when it appears that the fixed opinion was based on a full ac-
count of the homicide, by a trusted friend, fully believed and
confided in, and that friend on the witness-stand repeats the
account which formed the juror's opinion, it cannot be affirmed
that such a juror was competent to try one for his life or
liberty.    That is this case.   From careful perusal of the record,
I am convinced that the duty of the court to present the ac-
cused an impartial jury, one above all exception, was very per-
functorily performed, and that Johnson was not an impartial
juror, and that a new trial may well be granted on this ground.

I invite attention to *Coughlin* v. *People,* 144 Ill., 140, if the
court is disposed to go beyond our own reports in the investiga-
tion of this case.

*L. M. Southworth,* on same side.

The code of 1880, followed by that of 1892, in the effort to
secure intelligence in the jury box in criminal trials, went to
the utmost verge of constitutional tolerance in declaring the
competency of jurors.    In Mabry's case, 71 Miss., 716, it was
held that a juror who had formed an opinion of the case from
hearing part of the testimony, and was not sure that he could
try the case impartially, was incompetent.    In Green's case, 72
Miss., 522, one who had formed an opinion which it would
require testimony to remove, but who swore he could try the
case impartially, was competent.    In Jeffries' case, 74 Miss.,
675, there was manifestation of a disposition by this court to
restrain somewhat the generality of expressions in the Green
case, and to require that it should be made sure, not merely
from the declared belief of the juror that he could try the case
impartially, but, from ascertainment of the real state of his

mind, that he could try the case impartially. In that case are some very judicious observations as to the sanctity of the constitutional guaranty of an impartial jury, worthy of regard and enforcement. Certainly the humblest should be tried by an impartial jury, and certainly, if Johnson had disclosed what is now known, from his own testimony, he would not have been received as a juror.

*Monroe McClurg,* attorney-general, for appellee.

Juror Johnson was accepted by appellant's counsel. The usual questions were propounded to him on his *voir dire,* by the court, but counsel declined to further question him with a view to challenge, either peremptorily or for cause, notwithstanding the juror answered that he had an opinion that it would take evidence to remove. Proper examination of the juror by appellant's counsel would have disclosed that a witness for the state, and, as counsel was surely aware, the most reliable one, had given Johnson the information upon which his expressed opinion was based. Having declined to so question the proposed juror, and contenting himself with the usual or general examination by the court, under the requirements of the code, he cannot complain, after verdict, that the juror was incompetent because he entertained an opinion that the accused ought to be hung, and had so expressed himself. Penn's case, 62 Miss., 450; Wood's case, 62 Miss., 220.

Juror Johnson made oath on his *voir dire* that, notwithstanding his opinion, he could try the cause fairly and impartially under the evidence and the instructions of the court, and the court was satisfied that he had no bias of feeling or prejudice in the case, and accepted him. This was the test provided by the statute. Code of 1892, § 2355.

On hearing the motion for a new trial, the court heard all of the testimony offered touching Johnson's qualification, and entered judgment expressing, in effect, his disbelief of the impeaching witnesses, and expressly finding that the juror was

competent, bringing the controversy in this court clearly within the rule announced in Cannon's case, 57 Miss., 147.

Argued orally by *J. A. P. Campbell,* for appellant, and by *Monroe McClurg,* attorney-general, for appellee.

Calhoon, J., delivered the opinion of the court.

From a careful reading of the testimony adduced on the motion for a new trial, it is impossible for us to escape the conclusion that Johnson was, in fact, incompetent as a juror; that, nevertheless, he qualified himself as such on his *voir dire,* and that he concealed from the court the facts upon which it would have set him aside *ex mero motu.* It is abundantly shown by three witnesses that on the evening preceding the trial he said he had heard all about the case from one McElroy, a leading state eye-witness of the homicide; that McElroy boarded in the same house he did, was reliable, that he believed him, and that Shepprie ought to be hung. He denies this, but he does not deny saying to a Mr. Allen in the court-room, just before the trial, pending an application for continuance, that he knew McElroy well; knew him to be honest and upright; would believe anything he told him, and that he had told him all about the case. All this he concealed from the court and counsel. This case is covered by that of *Jeffries* v. *State,* 74 Miss., 675 (21 So. Rep., 526), and nothing can be added to strengthen the very able opinion of Judge Stockdale in that case, and no case in our reports is in conflict with it. We also approve *Coughlin* v. *People,* 144 Ill., 140; 33 N. E., 1; 19 L. R. A., 57, on the same line. It is clear to our minds that the appellant did not have a trial by an impartial jury, which is guaranteed to all by the constitution. One may have talked about the case to a witness, and still be a competent juror; but we cannot hold one competent, even under our statute (code, § 2355), who has heard all the facts from an eye-witness whom he believes truthful, whose statement he credits,

and on whose statement he forms a fixed opinion. This was Johnson's frame of mind when he went on the jury, even by his own testimony, and he was not competent, though he says that his opinion "was not so fixed that it could not be removed by evidence." It seems certain that, if he had not concealed these facts on his *voir dire,* he would not have been permitted to sit as a juror.

*Reversed and remanded.*