EDWARD GAMMONS *v.* STATE OF MISSISSIPPI.

1. CRIMINAL LAW. *Jurors. Code* 1892, § 2355. *Impartiality. Insanity.*
   Under Code. 1892, § 2355, providing that a juror shall not be disqualified because he has an opinion as to the guilt or innocence of the accused, if it shall appear to the satisfaction of the court that he has no bias of feeling or prejudice in the case and no desire to reach any result in it except that to which the evidence may conduct, a conviction will not be reversed:

   (*a*) Because a juror was adjudged competent who testified on his *voir dire* that he had read of the case; had heard rumors, but had never heard any of the witnesses; that he had an opinion from what he had heard which would require evidence to remove; that, though he had such opinion, he could give defendant a fair trial, because the opinion was based on what he had heard and read, and he had heard none of the particulars; that he had no bias or prejudice against defendant and would try him fairly and impartially on the evidence to be introduced; that he had no prejudice against the plea of insanity, and if the evidence caused him to have a doubt he thought he could give defendant its benefit; nor

(*b*) Because another juror was adjudged competent who testified
on his *voir dire* that he had no bias or prejudice against defend-
ant, and would give him a fair and impartial trial on the evi-
dence; that he had heard nothing from any one who personally
knew, but had formed and expressed an opinion from what he
had seen in the newspapers; that this opinion would require
testimony to remove, but testimony would remove it; that he
would go into the jury box "as free as I believe it is possible for
a human mind to be;" that he could not say but that he had a
prejudice against the defense of insanity, but that he would give
defendant the benefit of all reasonable doubt; that it would de-
pend upon the nature of the insanity as to what effect it would
have on his decision, but he would give defendant the benefit of
it if it arose from disease which he had contracted from ciga-
rette smoking or from heredity; that in his judgment a man was
not entitled to the plea of momentary insanity if his condition at
the time of the homicide arose from drunkenness or from
brooding over his relations with deceased; that he could give
defendant the benefit of all reasonable doubt as to his guilt,
whether that doubt was raised by the question of insanity or not.

2. SAME.   *Challenges*.   *Code* 1892, § 1423.

Under Code 1892, § 1423, providing that the accused shall have
presented to him a full panel before being called upon to make
his peremptory challenges, a defendant should withhold all per-
emptory challenges until a full panel is presented, and not inter-
pose such a challenge on the overruling of his challenge for
cause while the panel is incomplete. If a defendant challenges
a juror peremptorily, being advised by the court that he need
not do so while the panel is incomplete, he cannot complain
that a full panel was not presented to him before he was called
upon to make such challenges.

FROM the circuit court of, second district, Yalobusha county.
HON. SAMUEL C. COOK, Judge.

Gammons, appellant, was indicted, tried, and convicted of
murder, sentenced to be hanged, and appealed to the supreme
court. The opinion states the facts of the case upon which the
decision is based.

*Isaac T. Blount,* for appellant.

While it appears that for a time the courts were inclined to
place a very liberal construction on sec. 2355 of the code in favor
of the state, it clearly appears in the later decisions that this

court construes the section favorably to the accused and these later cases declare the recognized law on this subject. *Klyce* v. *State,* 79 Miss., 652; *Shrepprie* v. *State,* 75 Miss., 740; *Fugate* v. *State,* 82 Miss., 189 (s.c., 33 South. Rep., 492); *Jeffries* v. *State,* 74 Miss., 679.

The case at bar falls clearly within the condemnation of these decisions. That a juror qualifies himself where he has an impression or even a fixed opinion counts for nothing; for, as tersely expressed by Justice Price in Fugate's case, "such is the constitution of the human mind, such the frailty and imperfection of human nature, that one could hardly be expected to declare himself controlled by bias or prejudice, when under oath; and perhaps the more honest the man, the more solemnly would he assert his freedom from both." In impaneling the jury in this case, the trial judge evidently acted upon the supposition that notwithstanding a juror might have a "fixed opinion," yet, if he would say that he had no "bias or prejudice in the case, and no desire to reach any result in it, except that to which the evidence may conduct," he was competent. This is manifestly wrong and condemned by the decisions above quoted and in decisions referred to by the court in considering this question.

I would now call the attention of the court to the manner and, as I contend, the errors of the court in impaneling the jury. When the state accepted the jury, and it was tendered to the defendant, upon examination by defendant's counsel it was found that three jurors were disqualified and they were set aside. This left only nine jurors, and when counsel for the defendant asked for a full panel, he was answered by the court, "I tendered you a full panel twice:" My contention is that the defendant was entitled to be tendered a full panel before proceeding further, and it was error to refuse it.

*J. N. Flowers,* assistant attorney-general, for appellee. There is but one question raised by counsel for appellant in his brief which merits serious consideration by this court, and

that is as to the juror Gillon.  But it will be noted here that counsel for the defendant did not exhaust his rights and resources at the trial.  Gillon was the first man he challenged peremptorily.  He challenged him irregularly and out of time. He was not required to challenge any proposed juror at the time he exercised this peremptory challenge upon Gillon.  The court advised him at the time that the defendant was not required and had not been required to exercise any peremptory challenge before he had been tendered a full panel of competent jurors. There might have been further investigation as to the competency of this man.  But counsel for the defendant seemed to have hurriedly jumped at the opportunity to catch the court in what he considered error and thus get the benefit of it in the record before a second thought could be taken and the error, if any, corrected.  At the time juror Gillon was challenged peremptorily there were only six other men who had been declared competent jurors after the examination by the defendant.  He exercised his challenge when there were but seven men who had been passed upon by the court as competent on the jury.  This was his first peremptory challenge.  He exercised it at a time when he might have waited for five other jurors to be accepted by the state and examined by him with a view to challenge for cause, or until five other men should run the gauntlet of both examinations.

Argued orally by *Isaac T. Blount,* and *Robert Powell,* for appellant, and by *J. N. Flowers,* assistant attorney-general, for appellee.

TRULY, J., delivered the opinion of the court.

Two assignments of error are mainly relied upon in the effort to procure a reversal of the judgment and the awarding of a new trial herein.  The first is based on the action of the court in impaneling the jury which tried the cause, and arises from the following circumstance: The court had examined upon their *voir*

*dire,* and pronounced competent, twelve jurors. The panel thus completed was tendered to the state, and was by the state accepted. Thereupon counsel representing the defendant was allowed to begin anew the examination of individual jurors composing the panel, touching their qualifications and competency. He had thus examined three of the jurors, and, successfully demonstrating their incompetency, challenges for cause had been sustained. At this time counsel asked for a full panel. This the court denied, stating that a full panel had been tendered, and that counsel for defendant would not be required to exercise any of his peremptory challenges until a full panel was tendered him. Counsel for defendant continued his examination of the remaining jurors as to their competency. During the progress of this examination, while the juror Gillon was being questioned, a challenge for cause on behalf of the defendant was submitted as to him, which, after further interrogation of the juror by the court, was overruled. Exception to this ruling was reserved by the defendant, and immediately the juror Gillon was by the defendant challenged peremptorily. The court again stated that he "had not and did not require defendant to exercise his peremptory challenge before he had been tendered a full panel of competent jurors." The examination was concluded, the panel refilled, tendered to and accepted by the state, and then the full panel so constituted was tendered the defendant, to be passed on peremptorily. The defendant exercised a peremptory challenge as to one juror, and announced content as to the remaining eleven. This same proceeding of filling the panel, tendering it to the state and then to the defendant, was continued until the defendant had exhausted his twelve peremptory challenges. Finally the jury was again completed by the acceptance on the part of the state of the juror McCormick. To this juror a challenge for cause was submitted by the defendant, and overruled by the court.

The action of the court in refusing to complete the panel when the defendant had successfully challenged three jurors for

cause, before requiring the counsel for defendant to continue his examination as to competency of the remaining jurors, is assigned as error. Section 1423, Code 1892, provides that "in all cases the accused shall have presented to him a full panel before being called upon to make his peremptory challenges." By judicial interpretation, this statute has been construed to mean that the defendant is not only entitled to have a full panel tendered him, in the first instance, before being required to exercise any of his peremptory challenges, but, after he has challenged all those on the panel first presented whom he may desire, he is entitled to again have a full panel tendered, and this course repeated until the jury is finally secured. We approve and reaffirm the interpretation given this statute in *Gibson* v. *State,* 70 Miss., 554 (12 South., 582), and *Funderburk* v. *State,* 75 Miss., 20 (21 South., 658). The record here presented shows that appellant's right under the rule quoted was in no particular abridged or denied; that the privilege thereby granted was neither restricted nor limited. In no instance was appellant called on to make a single peremptory challenge when a full panel, previously accepted by the state, was not tendered him. It is true that one juror was peremptorily challenged by the defendant when he was not confronted by a full panel, but this was a purely voluntary act on the part of counsel. The challenge was made out of time, when he was not required to exercise his right, and was persisted in after the court had repeated its statement that counsel was not called on to use his peremptory challenges. But the statute is expressly limited to peremptory challenges, and never contemplated that a full panel should be tendered the defendant after each challenge for cause had been sustained. Such a state of case is not covered by the reason of the law, and to so extend the rule would inevitably produce much confusion and result in uselessly protracted examination of jurors. The better practice to be pursued in impaneling juries in capital cases, or other cases exciting great public interest—and this we com-

mend—is that the presiding judge shall personally conduct the entire examination in ascertaining the competency of each juror as presented, allowing full latitude to counsel in their suggestions of questions to be propounded, and giving free scope to such preliminary investigation, so as to fully search the conscience of the juror, and then pass on all challenges for cause before the juror is by the court pronounced qualified and allowed to take a seat in the jury box. When the panel is complete of jurors so found to be qualified, present to the state for the exercise of peremptory challenges; when a full panel is accepted by the state, present to the defendant, and call on him to make his peremptory challenges; and so repeat, as hereinbefore indicated, until the challenges are exhausted, or both sides announce themselves content with the jury. In actual practice this rule will be found to insure a full and impartial examination of every juror without unnecessary prolixity or repetition, will prevent much confusion, and will materially expedite the impaneling of juries in cases of great notoriety. Appellant was granted the full benefit of every right under the rule which he invokes, and we find no error in the action of the court in impaneling the jury.

The next assignment of error, and the one most strongly pressed in brief and by oral argument, challenges the correctness of the ruling of the court in pronouncing certain jurors competent.

A thorough and painstaking examination of the record, in which we have read with great care the entire examination of every person called for jury service, and whose competency was passed on by the court, demonstrates that the only two instances in which the ruling of the court is subject to any degree of criticism, with any show of reason, was in holding J. J. Gillon and J. L. McCormick to be competent jurors. The record shows that, of the twelve men who were peremptorily challenged by defendant, Gillon was the only one against whom a challenge for cause had been preferred. The record further

shows that, of the twelve men who actually served as jurors in the trial of the case, McCormick was the only one whom the defendant asked to challenge for cause. The examination of the other eleven who constituted the panel as accepted showed such absolute fairness and impartiality that no challenge for cause was even suggested. If, therefore, the juror McCormick was qualified under the law, appellant would have no cause of complaint on the score that he did not have a fair and impartial jury. But inasmuch as he exhausted his peremptory challenges, he would have ground of complaint if the record sustains his contention that he was, by an erroneous ruling of the court in pronouncing Gillon competent, compelled to exercise one of the peremptory challenges granted him by the law in excluding from the jury box a disqualified and incompetent juror, who ought to have been excused by the court when challenged for cause. The argument resolves itself into this: If McCormick was incompetent, appellant is entitled to a reversal because he did not enjoy the constitutional guaranty of a trial by an impartial jury. If McCormick was competent, but Gillon incompetent, appellant is entitled to a new trial because he was unlawfully denied the privilege of exercising one of the peremptory challenges allowed him by statute. Both of these contentions are sound, and if either be supported by the record, a reversal must follow.

Was the juror McCormick competent? McCormick, on his *voir dire,* testified: That he had no bias, feeling, or prejudice against defendant, and would try him fairly and impartially on the evidence introduced, would return a verdict according to law and evidence, and had no other motive in going on the jury. He had heard of the case, and had seen it in the paper. Had heard the rumor, but had never heard any of the witnesses, and had never heard it talked in town. That he had an opinion from what he had heard, and "reckoned it would" require evidence to remove that opinion, but, although he had such opinion, he could give the defendant

a· fair trial, because his opinion was based on what · he had heard and read; but he had heard none of the particulars, knew none of the evidence, and only knew what "was floating through the country." Had no feeling or prejudice against the plea of insanity, and, if the evidence caused him to have a doubt as to the sanity at the time of the commission of the homicide, thought he could give him the benefit of it. We think the statement of the juror brings him clearly within the express terms of § 2355, Code 1892. That section provides that a juror otherwise competent shall not be disqualified by reason of the fact that he has an impression or opinion as to the guilt or innocence of the accused, "if it shall appear to the satisfaction of the court that he has no bias of feeling or prejudice in the case, and no desire to reach any result in it except that to which the evidence may conduct." This juror, by the very full disclosure of the sources of his information—and there is no hint of any concealment or evasion—showed that he had then on his mind no more than a mere impression, which would in no wise influence his deliberation or operate to the prejudice of the defendant. To hold this juror incompetent, in the light of his examination, would be to judicially repeal the code section cited. As juror McCormick was manifestly competent, appellant was tried by a fair and impartial jury, and his constitutional right in this regard was neither denied nor in any manner abridged.

Did the court err in holding Gillon to be a competent juror?

At the threshold of this investigation we are met by the contention of the state that, under the facts of this record, appellant cannot be heard now to question the correctness of that ruling. It is said: Gillon was challenged out of time, when defendant was not called upon, and when, under the orderly and established practice, he had no right to exercise the power of peremptorily challenging; that the hasty challenging of the juror shows that it was a shrewd effort on the part of skillful counsel to irrevocably hold the court to a ruling which was con-

ceived to be erroneous, and to prevent the possibility of a reconsideration thereof, which, upon reflection, might have been made, had the challenge been deferred until in the due course of the trial it should properly have been submitted. There is much force in the argument, and cases may arise in which, by a challenge by counsel made out of time, an appellant would be denied the privilege of presenting the ruling of the court for review, particularly where the effect of such act was to deprive the court of an opportunity of reconsidering or reversing its ruling. The orderly procedure which should be duly observed requires that, as a defendant cannot be called on to make a peremptory challenge until presented with a full panel, he should, under the direction of the court, withhold all peremptory challenges until that time. Again, cases might well occur when the state would desire to challenge peremptorily a juror who had been unsuccessfully challenged for cause by the defendant. In the instant case, however, there is no intimation of any desire on the part of the court to reconsider its ruling as to Gillon's competency, and we will not allow the premature challenge of a juror made by counsel in his zeal to secure a possible advantage to his client to so operate as to deprive appellant of any benefit to which he may be rightfully entitled by reason of any ruling of the court.

1. Recurring to the consideration of the competency of Gillon, we detail his *voir dire* examination: He had no bias or prejudice, and would give a fair and impartial trial from the evidence. Had heard nothing from any one who personally knew, but had formed and expressed an opinion from what he had seen in the papers, principally. This opinion it would require testimony to remove, "but testimony would remove it." Would go into the jury box "as free as I believe it is possible for a human mind to be." That, while he could not obliterate his opinion except by going over the evidence, this would remove it, as his opinion was founded, not on testimony, but on hearsay, which he did not know was correct. That he could not

say but that he had a prejudice against the defense of insanity, but that he would give the defendant the benefit of all reasonable doubt. It would depend on the nature of the insanity as to what effect it would have on his decision, but would give the defendant the benefit of it if it arose from disease which he had contracted, from cigarette smoking, or was hereditary. But that, in his judgment, a man was not entitled to the benefit of a plea of momentary insanity if his condition at the time of the homicide arose from drunkenness or from brooding over his relations with the party deceased. The last question propounded to this juror, and his answer thereto, we quote literally: "Q. The law would require you, if taken as a juror, under your oath, to give this defendant the benefit of all reasonable doubt engendered in your mind from the testimony in the case as to his guilt or innocence, whether it would involve sanity or insanity or not. Now, if you were taken upon this jury, could you take an oath and give this defendant the benefit of all reasonable doubt as to his guilt, whether that doubt was raised by the question of sanity or not? Ans. I would certainly do that. I would the best I could. I have no other motive in this world than to do this." Appellant contends that this examination, the salient portions of which have just been set out, demonstrates the unfitness and disqualification of the juror, and that the court committed palpable error, and to his prejudice, in not sustaining the challenge for cause. Four cases are relied on to support this contention—viz.: *Jeffries* v. *State,* 74 Miss., 677 (21 South., 526); *Klyce* v. *State,* 79 Miss., 652 (31 South., 339); *Shepprie* v. *State,* 79 Miss., 740 (31 South., 416); and *Fugate* v. *State,* 82 Miss., 189 (33 South., 942). We will examine them in order. In the Jeffries case the facts bearing upon the competency of the juror whose fairness was impugned, as gathered from the opinion, were these: The juror "was fully examined on his *voir dire,* and stated under oath that he knew nothing of the facts of the case at bar, had no bias, prejudice, or feeling, and could try it impartially," whereas,

in truth, as was disclosed by the motion for a new trial, he did
have an opinion, and had expressed as the opinion which he
then entertained, that Jeffries, the defendant in the case, "was
not justifiable in killing Odell." On this state of case the court
held that § 2355, Code 1892, could not be invoked, because that
section dealt solely with cases where jurors stated that they
held opinions or impressions, and submitted the question of
their competency to the judgment of the court, and that it did
not apply where the existence of the opinion was denied or
knowledge of the facts of the case concealed. The court says:
"The juror, having an opinion, and a very decided one, evi-
dently, concealed it from the court and prisoner, and gave no
opportunity for the court to see whether he was a competent
juror. Had he informed the court that he had an opinion that
the defendant was not justifiable in killing Odell, and submitted
himself to open examination, and informed the court that the
prisoner whom he was about to try was not justifiable, no court
would have allowed him to sit as a juror to try it. It would
have been no trial, so far as that juror was concerned. This
case is practically in that attitude, and the prisoner is entitled
to whatever benefit grows out of it." In the Klyce case the
conclusion of the court is expressly limited to that particular
case, and the facts on which it is based clearly appear from this
brief extract from the opinion: "It would nullify the consti-
tutional provision, and seriously endanger the fairness of trials,
to hold a juror who has an opinion competent merely because
he says he could try the case impartially. He may say so and
may think so, but it is for the court to say whether he in fact
can, viewed in the light of the weakness of human nature. We
are constrained to think that a man who has heard the facts
from the state witnesses, believes what they told him, and from
that has formed and expressed an opinion, which he still re-
tains, is not an impartial juror, in the meaning of the consti-
tution, whatever may be his own idea of his power to try im-
partially. We hold this, and nothing more, and think it will

not require much psychological investigation to sustain this conclusion." In the Shepprie case the entire finding of the court is summed up in a clear and concise statement. We quote: "It is clear to our minds that the appellant did not have a trial by an impartial jury, which is guaranteed to all by the constitution. One may have talked about the case to a witness, and still be a competent juror; but we cannot hold one competent, even under our statute [Code 1892, §2355], who has heard all the facts from an eyewitness, whom he believes truthful, whose statement he credits, and on whose statement he forms a fixed opinion. This was Johnson's frame of mind when he went on the jury, even by his own testimony, and he was not competent, though he says that his opinion 'was not so fixed that it could not be removed by evidence.' It seems certain that, if he had not concealed these facts on his *voir dire,* he would not have been permitted to sit as a juror." In the Fugate case, in the course of an especially able and luminous discussion, Price, J., states the finding of the court in a few strong sentences: "But the oath made, it is at last, by the statute, referred to the judgment of the circuit judge whether the juror is in truth and fact impartial, as to which the circuit judge will determine from all the evidence addressed to that point. He may, from all the evidence, hold him impartial, though he has an impression or opinion. These opinions or impressions, producing no fixed conclusion, leaving the proposed juror without bias of feeling or prejudice, and with the desire to reach only the result to which the evidence should conduct, are not enough to disqualify. But a settled opinion, arising from rumor, from discussing the facts of the case with others, from hearing the witnesses' account of the testimony, and not knowing whether such proposed juror could ignore his opinion, being on one side of the case, with convictions that would require strong and positive evidence to remove, does disqualify a proposed juror."

An examination of the former opinions of the court on this

subject simply serves to demonstrate the futility of all effort to frame any definite rule to be followed in passing upon the competency of jurors. The only general proposition really deducible from these opinions is that the decision in every instance must depend on the varying circumstances of the particular case. In determining the question of the competency of each individual proposed as a juror, the court is not bound by the oath of impartiality made by the juror—for no juror can constitute himself the judge of his own competency—but should take into consideration the demeanor of the proposed juror; his answers, as indicating candor or a desire to evade the question or conceal the truth; the impression or opinion which has been formed or expressed; the extent of knowledge of the facts of the case; the sources from which the information came; and from these, and from the many intangible yet potent elements which constitute personality, decide upon the existence of bias or animus either for or against the accused.

The examination of the proposed juror, Gillon, shows that he was a man of intelligence and information. His answers were full, and give no hint of lack of frankness or concealment of the truth. He evinced no desire to be accepted as a juror, but expressed himself freely on every question propounded. He had talked to no witness, nor to any one personally cognizant of the real facts, but, from newspaper reports and from what he had heard in casual conversation, he had an opinion, which testimony would remove; and he announced his ability to go into the jury box with a mind free of bias or prejudice. Ought the court to have excluded him, as being unable or unwilling to try the case impartially? In the case of *Green* v. *State,* 72 Miss., 522 (17 South., 381), where this court, through Cooper, C. J., upholds the constitutionality of sec. 2355, *supra,* and makes a very full analysis of many cases bearing on the subject, the court says: "The juror Mosely on his *voir dire* stated that he lived in the immediate neighborhood where the crime was committed, and had heard it dis-

cussed, and had formed an opinion as to the guilt or innocence of the defendant, which opinion was of such a fixed character it would require evidence to remove it, but he thought he could try the case fairly and impartially according to the evidence." And upon the exact state of case here presented, the court, as to that juror, says: "The juror Mosely was not disqualified by the character of the opinion he had formed of the guilt or innol-cence of the defendant, and the appellant has no just cause of complaint because he was forced to exercise his right of peremptory challenge to exclude the juror from the panel." That case was much stronger for the appellant there than is the case at bar. The evident sincerity and frankness of Gillon manifested his willingness and his desire to "a true deliverance make between the state and the prisoner at the bar," and convinced the trial judge, as it has convinced this court, that he was both able and willing to try the case fairly and impartially. We think he was not disqualified by reason of a previously formed opinion. Such prejudgment and opinion as rested on the mind of this juror must perforce be entertained by every intelligent man as to every homicide or other incident of great notoriety, the purported details of which he has learned through the public press. Everything heard must make some impression on an active mind, slight and temporary, or deep and lasting, as the case may be; and the fairest and most truthful of men, if questioned, could only say: "From what I have heard, I have an opinion, which will remain until removed by testimony, but which testimony will remove; but my mind and heart are untainted by bias of feeling or prejudice." But this is not the "fixed opinion" referred to in some opinions as being sufficient to disqualify for jury service. The opinion which is there meant is of such a firm and fixed nature that it engenders in the mind that "pride of opinion" which causes one, involuntarily and innocently, it may be, to combat and doubt testimony tending to cast discredit upon the opinion already fixed. In truth, in a country like ours, where the great mass of the peo-

ple from whom juries are drawn are intelligent, advised of current events, and keenly alive to all that affects the public weal, to hold that men like Gillon are disqualified to serve as jurors might have the effect of placing the decision of important cases —crimes which stir the public heart—largely in the hands of those who have not the interest of the country at heart, or, more dangerous still, in the hands of the vicious, who, actuated by ulterior motives, would conceal the truth in order to qualify and be accepted as jurors. "Were it possible to obtain a jury without any prepossessions whatever respecting the guilt or innocence of the accused, it would be extremely desirable to obtain such a jury; but this is perhaps impossible, and therefore will not be required." These are the words of Judge Marshall, that great jurist, and were uttered during the trial of Aaron Burr. If, then, the practical impossibility of procuring such a jury was admitted by such an authority nearly a century ago, how much more hopeless is the task in these latter days of rapid and universal dissemination of news through the manifold agencies in use—the telegraph, telephone, daily mails, and enterprising press, with its omnipresent reporter and widespread circulation! In recognition of this condition of affairs, and realizing that in cases of great public concern it might be impossible to find men in the county where the crime was committed who had not formed some opinion, the legislature modified the ancient rule, and enacted sec. 2355, *supra,* so that one otherwise competent is not disqualified by the fact alone that he has an opinion as to the guilt or innocence of the defendant; vesting the court with power to accept the juror if convinced of his fairness, or exclude him if it be doubtful. And this was wise. Of necessity, the power must be intrusted to some one, and to no one more properly than to the circuit judge, who sits as an arbiter in judgment between the state and the citizen and whose duty it is to "hold the scales with a firm hand, without bias or prejudice." Himself untouched by the fervor of partisanship, unswayed by the zeal of advo-

cacy, he has the proposed jurors before him, sees them, hears them, weighs their words, notes their demeanor, and is better able to advisedly pass upon their competency than any other person or tribunal. So long as the power intrusted to him is fairly exercised, his findings will not be disturbed. This court will intervene only in cases of palpable error, where injustice has been done or there is an evident abuse of discretion.

But it is said Gillon was disqualified by reason of his statement that he was prejudiced against the defense of insanity. Under the facts of this record, we think not. It must not be assumed that the question whether a proposed juror in a criminal case is prejudiced against or favorably inclined toward any particular defense is any test of his qualification for jury duty. The plea in a criminal case is "Not guilty," and it is upon this plea alone that the case is submitted to the jury. Whether the defendant submits as his defense an *alibi,* insanity, self-defense, or any other, the question which the jury is called upon to decide is whether the defendant has been proven guilty by the evidence beyond all reasonable doubt. The true test of competency in this case was that applied by the last question asked Gillon: "Could you give the defendant the benefit of all reasonable doubt as to his guilt, whether that doubt was raised by the question of sanity or not?" And to that query a positive and affirmative answer was made. This fulfilled the requirement of the test. But even giving the rule the narrow construction contended for, it cannot avail the appellant. Appellant's defense (if that can be called a defense which, supported only by fragmentary and inconclusive testimony, draws its main strength from the force and ability with which it is presented by eminent counsel) was hereditary insanity or insanity superinduced by excessive cigarette smoking. As to insanity arising from either of these two specific sources, or if caused by disease, the juror expressly stated that he was not prejudiced as a defense, but would give the defendant the benefit of every doubt as to his sanity. This was the utmost

that appellant had the right to ask, and even this was an extension of the ·rule that the juror should not be prejudiced against the defense of insanity of the specific character with which he claimed he was afflicted. Without deciding upon the correctness of the private views which the juror entertained as to the rights other defendants might have to plead as a defense insanity produced by drunkenness or brooding over disappointment in love, they were clearly not material in this case, for the reason that appellant expressly disavowed the existence of either cause.

None of the assignments of error are well taken. ·Appellant had a fair trial, and, in view of the enormity of the crime, no other verdict could reasonably have been expected.

*Affirmed.*