JONES *v.* STATE.

(Division B. Dec. 10, 1923.)

[98 South. 150. No. 23557.]

1. CRIMINAL LAW. *Denial of motion for change of venue on ground of prejudice held not error.*

Where a person accused of crime has made a confession, which he afterwards retracted, and both the publication and the retraction have been published in newspapers circulating in the county and the matter has been discussed considerably by the people, but where the larger number of witnesses on the motion swear that they have not prejudged the matter, and do not think it has been prejudged, and that there is no prejudice against the accused, it is not reversible error for the trial judge to overrule the motion for a change of venue, especially if the *voir dire* examination of jurors does not disclose prejudice or prejudgment of the case.

2. CONSTITUTIONAL LAW. *Criminal law. Jury. Statute permitting questions to prospective jurors directly held constitutional; denial of defendant's right to examine prospective jurors directly held reversible error.*

Chapter 294, Laws 1922, providing that the attorneys of litigants or litigants not represented by attorneys may propound questions direct to prospective jurors being impaneled to try their causes without being required to ask such questions through the court, does not deprive the trial judge of control of the causes, nor impair the inherent power of the court, but is a mere rule of procedure regulating but not destroying the powers of the trial court, and is constitutional. The denial of such right by the trial judge is reversible error.

3. CRIMINAL LAW. *Subsequent confession made under inducement which had procured previous confession held not admissible.*

> Where a confession has been illegally obtained from a person accused of crime by inducement held out, or by-fear brought about by the persons taking it, a subsequent confession made under the influence of the same inducements will not be admitted, although the officer taking them . states to the accused that he need not make a statement unless he desires, and that such statement, if made, will be used against him, and that such officer has no offer to make him. In order to make the second admissible it must clearly appear that it was not made under the same improper influence as the first. *Banks· v. State,* 93 . Miss, 700, 47 So. 437, and other cases cited.

APPEAL from circuit court of Lee county.

HON. C. P. LONG, Judge.

J. M. Jones was convicted of murder, and he appeals. Reversed and remanded.

*Claude Clayton,* for appellant.

The first assignment of error, is predicated upon the action of the learned circuit judge in overruling the motion for a change of venue. I understand that this court will take judicial cognizance of the geographical location at the village of Plantersville with reference to the city of Tupelo, which distance is disclosed by the record to be very close to the metropolis of Lee county. This was a case of much notoriety. The newspapers of the city of Tupelo published startling accounts and reports, write-ups and editorials, concerning the confession made to the Burns Detectives. The circulation of these two newspapers, to-wit, the Tupelo Journal, and the Tupelo Review reaches into many hundred homes in the county; and it is shown by the record that approximately, according to an accepted standard known to the newspaper fraternity, that five people, read each editorial. This being true, or taking this as a basis for my conclusion, it must follow that the public generally knew that appellant had confessed to his guilt in this case, regardless of whether or not, the confession was in conformity to the accepted standard therefor, and had formed an opinion that he was guilty in fact.

I respectfully submit that a careful reading of the testimony of the witnesses introduced by defendant, which include the sheriff of Lee county himself, will show that the learned circuit judge erred in failing to sustain this motion. I do not advert to the testimony of any single witness introduced upon this point, but taking it as a whole, excluding some exceptions, this testimony of the witnesses should, and ought to have convinced the mind of the trial judge that this motion should be sustained. Why, the testimony of the sheriff himself, clearly indicates this fact. He was not a partisan and I take it that this court will carefully consider his testimony along with the testimony of the other witnesses introduced upon the hearing of this motion. Therefore, I respectfully submit that appellant did not have that fair and impartial trial contemplated by the patriarchs who formulated, wrote and put into operation the Constitution of the state of Mississippi. I refer to the cases of: *Tennison* v. *The State,* 79 Miss. 708; *Owens* v. *The State,* 82 Miss. 31; *Brown* v. *The State,* 83 Miss. 645.

The rule announced in these cases, cited *supra,* has been the law, was the law, when this motion was presented to the learned trial judge, and according to my judgment, will be the law, so long as the great commonwealth of Mississippi maintains its identity in the United States of America.

The second assignment of error is directed to the action of the learned circuit judge in overruling appellant's motion to propound questions direct to the jurors when the jury was being empaneled to pass upon his guilt or innocence. (See Tr. Pg. 73.) This motion was invoked under a law duly enacted by the legislature of the state of Mississippi at its 1922 Session and is found in what is known as the "Sheet Acts" thereof at page 377 and is chapter 294 in said laws.

In connection with assignment number two, it may be observed from the record, that after the overruling of the

motion, which is the foundation of assignment number two, a challenge for cause was interposed to every juror empaneled, all of which objections were also overruled by the learned trial judge. Therefore I submit assignments numbered two and three, and ask the court to consider them together.

This court has, as yet, not considered the above statute. This is the first time that it has been invoked. But it does not invade the inherent power of a court, especially a *nisi prius.* This point was distinctly, clearly and emphatically decided in the case of *Fuller* v. *The State,* 100 Miss. 811, which went up from Hinds county. In which opinion, which was delivered by one of our most distinguished and illustrious judges, it was decided and announced that an inherent power of a court was not in conflict with such a Statute.

In the case of *Tennessee* v. *Hudson,* recently decided by the supreme court of Tennessee, and which has not yet been published, according to advices from the West Publishing Co., but which will perhaps be available when this case is considered by this court, it was held that the refusal of a trial court to refuse to grant this request, was absolutely reversible error. Not having the case reported I cannot refer to it.

The fourth assignment of error has reference to the action of the learned trial judge in holding that the *corpus delicti* has been proved. No one knows, except God Almighty, according to this record, just how deceased came to his death. He may have been killed by a train, an automobile, could have fallen, or in many other ways. The fact that one of his pockets was missing, and the fact that part of his left trouser leg was missing, does not show a criminal agency. Suspicion is one thing, but proof is another. The confession, which was admitted under the well-established rule, is never admissible until the *corpus delicti* has been proven. This is elementary, therefore needs no citations.

I deem it a waste of time to refer this court to any authority on this proposition. If I am correct in this conclusion, no evidence of a confession should have been permitted to go to the jury, but a confession was permitted to go to the jury, which confession, according to the ruling of the trial judge, was a reiterated confession. And in this connection I shall discuss and direct the attention of the court to assignment number six in connection with assignment number four. A casual reading of the record will disclose the fact that the court, of its own motion, excluded the confession of appellant to the sheriff, and the two Burns Detectives, when made in the Southern Hotel in Tupelo, Mississippi, on the morning of his arrest. The court had held, I respectfully submit, that the *corpus delicti* had been proven, and that the first confession made or alleged confession made, to the Burns Detectives and the sheriff, was not admissible; but while appellant was still in the custody of the sheriff and the two detectives, in the Southern Hotel, and after being induced to make this confession and while under the same identical conditions and surroundings, a subsequent confession made to the county attorney, in the presence of a justice of the peace, was admissible and submitted it—this first confession, which under the undisputed testimony of the witnesses for the state, as disclosed by this record, was made under a promise to appellant that "it would be better for him to admit his guilt" and that "they would see that he was not mobbed" and that immediately thereafter he was placed in an automobile and carried to another county site for safekeeping. The first confession, manifestly convinced the trial judge that it was induced by hope, or, fear, or some other inducement that absolutely rendered it incompetent. The record shows this fact, yet, under the same conditions, under the control of the sheriff, and under the supervision of the two Burns Detectives in Room No. 10 of the Southern Hotel, the learned circuit judge, did permit, the written confession, of this old man,

in the absence of any proof of criminal agency, and after having rejected, and excluded of his own motion, the first confession, this reiterated confession to go to the jury. This was error. This has been condemned by the court of last resort in Mississippi, and in all other courts of last resort in the United States of America. This ruling of the learned circuit judge has been condemned in the case of *MacMasters* v. *The State,* 82 Miss. 459. Also the case of *Bishop* v. *The State,* 82 Miss. 846. A reiterated confession, where the first confession was made, under any inducement, either by hope or by fear, is never admissible. This is the rule announced by Prof. Wigmore in his revised edition of Greenleaf on Evidence. Therefore to permit this reiterated confession under the circumstances, where it was given, was manifest error. And without this, there was absolutely no evidence at all to indicate, or even indicate, the guilt of appellant, because the *corpus delicti* had not been proven, no criminal agency had been shown that deceased came to his death thereby, and that the question of the guilt or innocence of appellant should never have been submitted to the jury. This disposes of assignments numbered four and six as herein referred to.

The fifth assignment of error is predicated upon the sardonic language of the court, in the presence of the venire in overruling the motion of appellant for the right or privilege to propound questions direct to the jury. This assignment of error is corrolated with assignment number two. And I ask that it be considered with assignment number two, and specially ask the court, in the consideration of this case, to consider the objection to the ruling of the learned circuit judge hereinabove set forth, as to assignment number two.

I will discuss the seventh and eighth assignments of error together, which logically reach back to and connect with the previous assignments of errors heretofore dis-

cussed. If I am correct in my conclusion, with reference to the preceding assignment of error, then each of these, to-wit, assignments seventh and eighth, must be correct. Also, assignment number nine, if my contention is correct, with reference to any or all of the preceding eight assignments of errors, must fall by the wayside.

Assignment number ten is predicated upon the action of the court in permitting the question of the guilt or innocence of defendant, to go to the jury. And if either or any of the preceding assignments of errors is found to be correct, and is law, then I respectfully submit that this appellant should be discharged and given his liberty.

*J. H. Sumrall,* Assistant Attorney-General, for the state.

The first error assigned by counsel: "The court erred in overruling defendant's motion for a change of venue," is disposed of in my opinion, by careful reading of the record pages 9 to 54 both inclusive, which contains all the testimony introduced on the motion both by the state and appellant, and which clearly shows the following facts pertinent to this issue to-wit: 1. Twelve witnesses taken from different walks of life, and from all sections of the county, were introduced by the state and examined at length by the district attorney, and in some instances by the trial judge; and subjected in each instance to thorough cross-examination by counsel for appellant, as to their knowledge and opinion of the general state of mind of citizens of the county with reference to the charge against appellant; and the uniform opinion expressed by each and every witness was that, there was not only an unusual absence of prejudgment of the case under the circumstances, but several witnesses expressed the opinion that there was probably less feeling and less interest expressed about this case than was customary in cases involving the crime charged; and each witness expressed a

belief that appellant would be given a fair and impartial trial.

Six witnesses were introduced by counsel for the appellant, including the sheriff of the county, and the publishers of two local newspapers, in which the confessions made by appellant were published, but none of the eighteen witnesses introduced by both the state and defendant, on the motion, testified that there was any degree of feeling manifested against appellant, nor was the public mind inflamed against him.

I therefore respectfully submit that under the authorities cited by counsel for appellant, such a condition of the public mind did not exist in Lee county as to warrant the trial judge in granting a change of venue under the showing made by the evidence on the motion.

In addition to the authorities cited by counsel for appellant on this subject, I respectfully invite the attention of the court to the following cases in line with the authorities cited by counsel, which show all the facts and circumstances under which the change of venue should be granted to-wit: *Stafford* v. *State,* 76 Miss. 258; *Anderson* v. *State,* 92 Miss. 656; *Magness* v. *State,* 103 Miss. 30; *Eddins* v. *State,* 110 Miss. 798.

All of which cases apply the rule and illustrate the facts necessary to be shown on an application for change of venue, and I submit that it will then be perfectly apparent that no such facts or conditions are disclosed by this record, as to bring this case within the class of any of the cases cited both herein and by counsel for appellant.

On the other hand, I respectfully invite the court to contrast the facts disclosed in the following cases, wherein it was held that it was not error to overrule the motion for a change of venue, with the facts in the former cases cited to-wit: *Dillard* v. *State,* 58 Miss. 368; *Peebles* v. *State,* 33 So. 289; *Butler* v. *State,* 39 So. 1005; and then apply the rule as distinguished by the facts necessary to be shown, to the facts disclosed in this record, and there

can be no escape from the conclusion that the proof was not sufficient to show prejudice or prejudgment of the case existed, as to warrant the trial judge in granting a change of venue, and that he did not abuse his discretion in overruling the motion.

In support of my contention as to the correctness of the ruling of. the trial judge on this motion, and as to his right to exercise this discretion under the facts in the case, I respectfully refer the court to the following cases on this point to-wit: *Weeks* v. *State,* 31 Miss. 490; *Mask* v. *State,* 32 Miss. 405; *Stewart* v. *State,* 50 Miss. 582; *Cavanah* v. *State,* 56 Miss. 299; *Dillard* v. *State,* 58 Miss. 368; *Bishop* v. *State,* 62 Miss. 289; *Regan* v. *State,* 87 Miss. 422.

Passing now to a consideration of assignments numbered 2, 3 and 5, which really involve the same question, I respectfully call the attention of the court to the very lengthy and thorough examination by the trial judge, of not only the entire special venire as a whole, but of each individual venireman, as they were placed in the jury box for their final examination touching their qualifications as jurors to try this case, said examinations being shown on pages 65 to 79 both inclusive, of the record.

While it is true that chapter 294 of the Laws of 1922 provides: "That the parties or their attorneys in all jury trials shall have the right to question jurors who are being empaneled with reference to challenges for cause, and for peremptory challenges, and it shall not be necessary to propound the question through the presiding judge, but they may be asked by the attorneys or by litigants not represented by attorneys," yet by a careful reading of said statute it will be seen that said provision is not mandatory, but only directory, and therefore constitutes only permissive authority to counsel or litigant and no objection could be raised by a defendant if the provisions of this statute were not followed from choice of the litigant or his counsel, and therefore it is likewise

true that unless it was affirmatively shown that the appellant in this case at bar was deprived of a substantial right which resulted in harm to him, the error committed by the court in not allowing a further examination of prospective jurors by counsel, after a thorough and sufficient examination by the court on all proper matters, if error, was not such harmful error as to warrant a reversal of the case; when it is manifest that a different result could not have been reached after reviewing the whole record, since there was no question of controverted fact presented to the jury for a decision, and therefore the personnel of the jury was unimportant in view of the fact that the evidence introduced, if proper evidence, was absolutely conclusive, and only the question of admissibility of the confession which was within the province of the trial judge to decide, and which was properly decided by the court to be admissible, then the charge alleged in the indictment, with every necessary element thereof, and everything necessary in the way of proof to sustain the charge, was furnished by said confession, and therefore the whole case of the state was completely made out by this confession, and as there was no fact or circumstance introduced in evidence on behalf of the appellant controverting any fact introduced by the state, this would have been such a case, if there could be one under the law, where a peremptory instruction should have been granted for the state, and I therefore submit that any error that might have been committed by the trial court in the empaneling of the jury, could not have resulted in harm to the appellant therefrom under the peculiar facts and circumstances in this case.

Discussing first assignment Number 4, with reference to the proof of the *corpus delicti* in this case, in order to fully understand the importance of this matter in the case at bar, it is necessary to analyze the term into its several accepted definitions, in order that the correct definition applicable to the instant case may be selected.

Webster defines the words as follows: *"Corpus"* is a Latin word meaning body, especially a dead body of man or animal. *"Delicti,"* according to Webster, comes from the Latin word *"Delictum"* meaning fault. Blacks Law Dictionary defines the term as "The body of a crime," and "The corpse of a murdered man." Bouvier's Law Dictionary defines the term as "The body of the offense," "The body of a person who is accused with killing." Words & Phrases defines the term as "The body upon which the crime has been committed."

Applying the foregoing definitions to the facts in the case at bar, I earnestly insist that when proof was made of the finding of the body under the circumstances and conditions in evidence in this case, and the death of such person from the wound received under such circumstances, it was sufficient to give rise to the belief, and did cause the belief among the persons possessing such information, that murder had been committed, such belief existing to the extent as to cause a search to be made for the guilty party, which finally resulted in the apprehension of appellant and the charge being made against him informally before any confession was made, to my mind furnishes abundant proof of the *corpus delicti* even in cases where a confession is not involved, by the rule being different as to the strictness and completeness of the proof where a confession is involved, I confidently contend that the *corpus delicti* was sufficiently proven in this case ·upon which to predicate the admission of the confession in evidence.

In the very recent case of *Williams* v. *State,* decided by this court in March, 1922, and reported in 129th Mississippi at page 469, this court recognizes the rule which has existed in this state for years with reference to the *corpus delicti* being proven alone by the confession, which reiteration of the rule indicated a uniform holding by the supreme court of this state since a period as early as 26 Mississippi, said rule being announced in the textbooks

of to-day as follows: ''On the question how much corroboration of an extra-judicial confession is necessary to warrant the conviction of the accused in jurisdictions where more corroboration is required, the general rule is that the *corpus delicti* must be established by independent proof and that this shall be done before the confession is admitted in evidence. The grounds on which the rule requiring independent proof of a *corpus delicti* rest are the hasty and unguarded character which confessions have, a temptation which for one reason or another a person may have to say that which he thinks is most to his interest to say, whether true or false, the liability which there is to misconstrue or report inaccurately what has been said, the danger of a conviction when no crime may have been committed, the difficulty of disproving what may be said, and the feeling that the rule best accords with the humanity of the criminal law and when a great degree of caution applied in reasoning and weighing the evidence of confessions in other cases.''

The authorities further hold that independent proof of the *corpus delicti* to corroborate a confession need not be clear, positive and direct, circumstantial proof being all that is required, but the weight of authority is that the *corpus delicti* need not be established beyond a reasonable doubt by evidence other than an extra-judicial confession.

In discussing assignment number 6 which is simplified somewhat by the fact that the *corpus delicti* had previously been proven, and a strong chain of circumstantial evidence had been shown by testimony introduced by the state, before the introduction of the confession in question, yet I frankly confess to this court that under the authority of the recent case of *White* v. *State*, decided by Division A of this court at the March, 1922, Term, thereof, and reported in 129 Miss. at page 182, if the trial court correctly excluded the confession made to the sheriff and the other persons present just prior to repeating the con-

fession to the county attorney, Anderson, for the purpose of being reduced to writing, which written and signed confession was introduced in evidence and here complained of, then said written confession should not have been admitted, if I correctly understand the rule announced in the *White case, supra,* and other numerous cases decided by this court prior to said White case; however, I an unable to agree with the conclusion of the learned judge in the court below in his ruling, whereby the original confession was held inadmissible, and I respectfully submit with all due deference that it was error on the part of the trial court to exclude the original confession of the appellant, and thereby create a doubt as to the admissibility of the written confession by implication, and this court should so hold.

I am sure this court is familiar with the numerous decisions of the courts of this state and other states, reaching back to the annals of antiquity, wherein the distinctions have been made between admissible and inadmissible confessions, but since the facts and circumstances of each particular case are properly taken into consideration in reaching a correct conclusion with reference to any particular confession, then I desire to review briefly a few of the decisions wherein the facts are similar to the facts in the case at bar, in so far as they pertain to the question of whether or not a confession is admissible in evidence.

In *Peter* v. *State,* 3 Howard 433, it was held: "The confession of a prisoner, though made when he is in custody, are admissible against him, if otherwise unobjectionable."

In *Lynes* v. *State,* 36 Miss. 617, it was held: "The prisoners were in custody, and as witnesses before a jury of inquest over the body of deceased, were told by several of the jury that their testimony was contradictory, and that if they were guilty of the homicide, they had better confess. On the next day, they confessed the killing of a

person not in authority, and not present when the above statement was made to them by the jury. Under the foregoing facts it was held that the confession was admissible.''

In *Frank* v. *State,* 39 Miss. 705, it was held: ''The confession obtained by appeals to character and circumstances of the party accused, his family connection and situation in life, the claims of justice, and rights and safety of others that may be involved, demanding the truth to be told, and his responsibility to God, is admissible.''

In *Lee* v. *State,* 45 Miss. 114, it was held, a confession by the accused, not extorted by threats, fear, or promise, but freely and voluntarily made to one having no authority over him, is admissible in evidence.''

In *Jones* v. *State,* 58 Miss. 349, it was held: ''Where one in jail charged with murder expresses a desire to make a statement in regard to the killing, and a private person in the absence of the sheriff tells him it will be best to tell the whole truth, if the sheriff at the time warns him that his statement must be voluntary and that he need expect no favors from him, this excludes the idea that the officer sanctioned the inducement, and it being held out by a private person not having or assuming authority over the prisoner or the prosecution, the court is warranted in holding the confession voluntary.''

In *Peden* v. *State,* 61 Miss. 267, it was held: ''A statement by accused while under arrest is not rendered inadmissible merely because made to an officer having him in custody, if nothing is said or done to induce or extort a confession.''

In further consideration of this serious problem which to my mind will govern whether or not the conviction of this apparently guilty man shall stand, I desire to briefly discuss the principle underlying, and upon which all the decisions on this question have been based, and it is this:

The original rule which has been adhered to times without number almost, was upon the idea that an involun-

tary confession was not admissible because of its lack of
probative value, and for that reason an involuntary con-
fession which was induced by improper methods, especial-
ly fear, duress, sweat-box tactics, third degree methods
and the water cure, is just as likely to be untrue as true,
since the impelling motive under such circumstances
would be to preserve for the present the safety and com-
fort of the confessor, so that the courts have properly
held that it would not be in keeping with a humane en-
forcement of the criminal laws to impose a severe penalty
on an accused where there was no proof of guilt that
confession obtained in such manner; but this rule has
been applied with more or less strictness and deviation
from the original positive rule, to fit the varying degrees
of methods used in extorting or producing confessions,
however it is a well-settled principle of law that a rule will
be disregarded or absolutely discarded when the neces-
sity for such rule does not exist and therefore no violence
is done to the original principle and when a condition
does not exist which conforms to the proper test in de-
termining the application of the rule.

Argued orally by *Claude C. Clayton,* for appellant, and
by. *J. H. Sumrall,* Assistant-Attorney-General, for the
state.

Etheridge, J., delivered the opinion of the court.

The appellant, J. M. Jones, was indicted and convicted
of the murder of A. Kellis Rogers, and from said con-
viction appeals.

The deceased, Rogers, and the appellant, Jones, lived
in the village of Plantersville, on the Frisco Railroad, in
Lee county. In October, 1921, the deceased was found
near a pile of lumber close to the railroad enbankment in
Plantersville in an unconscious condition. A blow had

been struck on his head, and blood had formed in the dirt where he was lying, and a stick was found by the body. The sheriff of the county had passed through the village between five and five thirty o'clock in an automobile with the lights burning on his car, it being dark at the time, and he testified that the deceased was not there at that time, and if he had been he would have seen him.

The deceased was postmaster, and also had a contract to carry the mail to and from the trains, and one of the trains passed Plantersville near six o'clock in the afternoon, and the porter testified that he looked out for Mr. Rogers, who was generally standing close by for the purpose of exchanging the mail, and at first he did not see him, but saw him apparently crawling or wabbling along pushing a cart in which the mail was carried from the postoffice to the station, and that he ran out and got the mail, and thought that the deceased was then drunk, but paid no particular attention to him; that he caught the car, and looked back and saw that the car cleared Mr. Rogers, and went on his journey on the train.

As Mr. Immons, the sheriff, was going toward his home, and after he left the highway, a lumber truck approached going to Plantersville. This was some seven or eight miles from Plantersville, and the lumber truck traveled at about fifteen miles per hour. When it reached Plantersville, and was unloading the lumber, the appellant came up to Rogers' house, and called to some one. And the truck drove up and asked him what the trouble was, and he stated that Mr. Rogers was down there, and appeared to be very sick; that he wanted to get him to the house. The driver and some other people went with the appellant down near the depot, where Mr. Rogers was lying, and the appellant went on into the depot, and did not assist them in getting Mr. Rogers to the house. The driver of the truck stated that he got down and lifted Mr. Rogers, and Mr. Rogers looked squarely in his face, but was unable to say anything, and that in bending over him

Rogers' breath came squarely in his face, and that Rogers was not intoxicated, and did not have liquor upon his breath.

Two other witnesses testified that just before this they were coming down the railroad with a lantern, and that the appellant called to them, and asked them to stay with Mr. Rogers until he could get some one to get him to the house; that Rogers was very sick. Two other witnesses testified that, when the truck came up to the lumber yard, they were near where the deceased was afterwards found, and ran to the truck to get to go back·home on .it, and that they did not see the deceased.

The appellant was station agent at the railroad depot, but did not have the depot lighted, as was his custom, until a very few minutes before the train arrived.

The porter on the train above mentioned testified that Mr. Jones usually came out to the train every evening, but that he noticed this evening that he did not come out, but as the train pulled out he saw Mr. Jones looking out of the window of the depot.

The deceased had the pocket and part of one trousers leg torn away so as to expose his underclothing, the pocket being torn out. The deceased never was able to make a statement, and died about two days afterwards.

The witnesses who testified as to appellant, Jones, talking at the truck stated that he appeared to be excited and nervous.

It seems that there was no arrest of Jones until the 1st of January, 1923, and that he stayed in Plantersville a portion of the intervening time, and for a time carried the mail from the post office to the depot after Rogers' death—a contract which he had formerly had, but which he had lost through Rogers' underbidding· him. Later, however, this contract was awarded to the son of the deceased. Jones lived a portion of the time with his daughter at Plantersville, but later went to Chicago and Louisville, Ky., and finally settled or located in Chilli-

cothe, Tex., where he remained until about the 1st of
January, when he was induced to come to Tupelo, and on
his arrival there was taken by the sheriff up to a room
where two Burns detectives were, and had a conversation
with him, which will be referred to further on.

It appears that after the death of Rogers the sheriff
tried to find out who assaulted him, but could not make
much progress in that direction. Finally some citizens of
the county made up a purse, and secured detectives from
the Burns Detective Agency at Memphis, who continued
the investigation, and finally reached the conclusion that
Jones was the guilty agent, and got the sheriff to induce
Jones to return to Tupelo for an interview. When Jones
was carried into the hotel room he was engaged in a con-
versation which led up to the death of Rogers, and he was
asked by one of the detectives what he knew about it, and
he stated that he did not kill him. Whereupon the de-
tective stated: "Mr. Jones, you incriminate yourself.
We have not accused you of being guilty." Exactly what
transpired from then until the confession was obtained is
not fully disclosed. But Jones was urged to make a con-
fession, and seemed to have become greatly excited about
a mob, being impressed with the idea that he would be
mobbed, and being in great fear thereof. He was then
urged that it would be best for him to make a clean breast
of it, and it would be lighter on him, or better for him to
do so. This statement was made while he was in the
room with the sheriff and the detectives, and is testified
to by the sheriff. Finally Jones confessed, and implicated
a negro in the crime with him, stating that he (Jones)
and the negro planned to rob the deceased, and that the
negro struck the blow. Thereupon the county attorney
was sent for, and Jones taken before a justice of the
peace, and after the county attorney came and before
he took the confession in writing he stated to Jones that
he (Jones) did not have to make a statement, but what he
said would be used against him, and that he had no in-

ducements to offer him. Whereupon Jones made the statement, which was taken down in writing, and afterwards introduced in evidence over the objection and exception of Jones.

The appellant, Jones, was in the room with the detectives for something like three or three and one-half hours, during which time they were trying to procure this writing. The confession was taken and reduced to writing by the county attorney within about thirty minutes after the confession was fully made. Appellant was then taken to jail at New Albany for safekeeping, and the sheriff went to Artesia to arrest the negro implicated by the appellant.

The negro was arrested, and an examination of him was made, and the sheriff and the detectives reached the conclusion that Jones' statement implicating the negro was untrue. Thereupon they proceeded to New Albany and had the second interview with Jones, who was very much disturbed and afraid about a mob, and substantially the same proceedings were had as in the hotel, Jones being urged to make a truthful statement about it, and being told that it would be better for him to do so and to make a full and complete statement as to the truth of it. Thereupon he made his second statement, saying that that part of the confession implicating the negro was false, that he did it himself, and that he struck the blow and robbed the deceased of forty dollars.

The confession made in the hotel and the jail at New Albany were excluded by the trial judge, but the confession taken down by the county attorney was admitted in evidence over the objection and exception of the defendant.

It further appeared that after making the confession at the New Albany jail the appellant made a third statement denying that he had any knowledge of or participation in the killing of the deceased.

A motion was made for a change of venue, and upon this motion testimony of various citizens was taken, including the publishers of two newspapers in the city of Tupelo, who produced files of the paper giving an account of the confessions made by Jones, and testifying, one that his paper had a circulation of one thousand five hundred in Lee county, and the other that his had about one thousand. Various citizens from the several parts of the county were produced and examined, and testified that they had heard of the confession, and that the matter had been discussed in their several communities, but nearly all of the witnesses testified that they believed that the appellant could get a fair and impartial trial, and that they had heard that he had denied the confession, and that they did not believe there was any more notoriety or prejudice in the appellant's case than in other murder cases. The motion for a change of venue was overruled, and the ruling of the court assigned for error here.

We do not think the court erred in overruling the motion under the facts contained in this record.

After the overruling of the motion a special venire was ordered and a jury impaneled therefrom, the trial judge propounding the questions to the jurors touching their qualifications, etc., and when a jury of twelve was accepted by the state for cause and tendered to the defendant he made the following motion:

"*State of Mississippi* v. *J. M. Jones.*

"Comes now the defendant in the above-styled cause by his attorney, and moves the court for permission to ask the jurors questions direct both for challenges for cause and for peremptory challenges in the place of propounding such questions to the jurors through the court when the jury is being impaneled in the above-styled cause.

"This motion is predicated on the law of the legislature of the state of Mississippi passed at its 1922 session, and

is found in the sheet acts thereof at page 377 thereof, and is chapter 294 in said laws.''

To which motion the court made the following ruling: ''Which motion is overruled because the statute relied upon is unconstitutional, and one which the legislature of the state of Mississippi was powerless to enact, as it seeks to take the inherent power of the circuit court away and place the running of the courts in the hands of the legislature. But the court here and now offers to ask the whole jury and any individual juror any reasonable questions touching their qualifications as counsel may request.''

And this ruling is assigned for error.

Chapter 294, Laws of 1922, read as follows: ''That the parties or their attorneys in all jury trials shall have the right to .question jurors who are being impanèled with reference to challenges for cause, and for peremptory challenges, and it shall not be necessary to propound the questions through the presiding judge, but they may be asked by the attorneys or by litigants not represented by attorneys.

''Sec. 2. That all laws and parts of laws and all rules of court in conflict herewith be and the same are hereby repealed.''

The question presented by this assignment is whether or not it is reversible error for the court to deny the right given the appellant under this chapter, and whether or not the statute violates the Constitution. We do not know how the court below construed the statute, but from the above remarks we assume that it construed the statute to mean that all control of the court over the impaneling of the jurors so far as propounding questions was concerned was taken away. In our opinion the statute intends to confer the right upon the parties or their attorneys to personally and directly interrogate the prospective jurors as to their qualifications, opinions, and rela-

tions generally, so far as it would be bearing upon the issues being tried, but that it did not intend and does not mean that the court does not retain control over such examination to see that the privilege was not abused, and that unnecessary delays did not take place under the guise of propounding questions under the statute, the consistency and propriety of the questions being subject to the control of the judge as other examinations. As we view the statute, it is a regulation of procedure in reference to qualifying jurors, and does not impair the power of the circuit judge to judge of the qualification of the jury or as to the propriety or legality of the questions propounded, and does not unduly or unnecessarily impair any function necessary to be exercised to secure the fair and impartial jury contemplated by the statute.

The legislature has passed various statutes bearing on the subject of impaneling juries and the conduct of trials in the circuit court. The legislature in 1836 passed an act providing there should be no challenge to the array except for fraud in the officer summoning the jury, and that statute was attacked as being unconstitutional. But in the case of *Hare* v. *State,* 4 How. 187, 1 Morris' State Cases, 133, the court held the statute constitutional. And this case was approved again by the court in *King* v. *State,* 5 How. 730.

In *Dowling* v. *State,* 5 Smedes & M. 654, 1 Morris' State Cases, 280, the statute limiting the number of peremptory challenges in a capital felony to twelve was attacked as being unconstitutional, and the constitutionality of the statute was upheld by he court.

In *Green* v. *State,* 72 Miss. 522, 17 So. 381, it was held that section 2355, Code of 1892, providing that any person otherwise competent who shall make oath that he is impartial in the case shall be a competent juror in any criminal case, notwithstanding he has an impression or an opinion as to the guilt or innocence of the accused, if it appear to the satisfaction of the court that he has

no bias or feeling or prejudice in the case, and no desire to reach any result in it except that to which the evidence may conduct, but any juror shall be excluded if the court be of the opinion that he cannot try the case impartially, and the exclusion shall not be assignable for error, this court held that it would not impair the right to an impartial jury under section 26 of the Constitution of 1890. The court, in the conclusion of its opinion in that case, said: "We are entirely satisfied that it was within the legislative power to change the rule as has been done, and that in the present case the juror was rightly held to be competent."

In case of *Hare* v. *State,* 4 How. 187, the court, at page 198 of that report, in discussing the constitutionality, said: "But I cannot regard the act of 1836 as subject to this objection. It does not take away the right, but only provides the method of enjoying it."

So it seems here that the statute does not take away the right of the court to impanel a jury, but merely regulates the procedure.

Section 2177, Hemingway's Code (section 2685, Code of 1906), which is the section dealt with in *Green* v. *State, supra,* materially changes the law as it existed prior to its enactment as to who is a fair and impartial juror in a case. But the validity of the statute as construed by the court has been upheld in many cases.

In *Gibson* v. *State,* 70 Miss. 554, 12 So. 582, it was provided that, under section 1423, Code of 1892, which is section 1496, Code of 1906, and section 1254 of Hemingway's Code, providing that all peremptory challenges by the state shall be made before the jury is presented to the prisoner, and in all cases the accused shall have presented to him a full panel before being called upon to make his peremptory challenges, was involved in the case, and the conviction was reversed because the right created by the statute had been infringed by the court below in compelling him to exercise his rights before a full panel was tendered him.

There are many other regulations of procedure that affect the judge's functions, and this court has reversed numerous cases for infraction of the statutory rights given by these statutes. For instance, in section 577, Hemingway's Code (section 793, Code of 1906), the judge is prohibited from summing up or commenting on the testimony, and prohibited from giving instructions on his own motion, and requires all instructions to be in writing. Under this section as construed it had been held that a judge could not tell the jury what the law was, except as asked by the litigants, and it must then be in writing. This seems to be nearer an impairment of the inherent powers of the court than the statute before us.

The general rule is that the legislature may prescribe rules for the government and enforcement of rights secured by the Constitution so long as such legislative act does not amount to a practical denial of the right. The court does not merely consist of the circuit judge, but consists of the juries, officers, and judge, and the statute before us does not impair the constitutional functions of the court.

The next question for consideration is whether the denial of the rights secured by the statute constitutes reversible error. Section 2177, Hemingway's Code (section 2685, Code of 1906), reads as follows:

"Any person, otherwise competent, who will make oath that he is impartial in the case, shall be competent as a juror in any criminal case, notwithstanding the fact that he has an impression or an opinion as to the guilt or innocence of the accused, if it appear to the satisfaction of the court that he has no bias or feeling or prejudice in the case, and no desire to reach any result in it, except that to which the evidence may conduct; but any juror shall be excluded, if the court be of the opinion that he cannot try the case impartially, and the exclusion shall not be assignable for error."

It will be seen from a reading of the statute that it makes the opinion of the jury and its fairness and impartiality an important factor to both the state and the defendant. It materially alters the law existing before the enactment of the statute, and a review of the decisions of the court before and after the enactment of the statute will show how important to both the state and the defendant the juror's state of mind is.

In the case of *Sam* v. *State,* 13 Smedes & M. 189, 1 Morris' State Cases, 430, the court considered, at length the law on the subject of impartiality of jurors, and reached the conclusion that no rule of universal application could be laid down; that it is the duty of the court to see that an impartial jury is impaneled and composed of men above all exception; that the great value of trial by jury consists in its fairness and impartiality, and the right of trial by such a jury is secured by the Constitution; that a juror is impartial when his mind is not inclined to either side, and he is partial if it has taken a direction in favor of either; that this direction may be so slight as to be no impediment to arriving at a just conclusion, or it may be so strong as to prevent the judgment from having fair scope; in the one case he would be competent and the other not; that his competency must depend upon the nature and character of the opinion, and not on the source from which it is derived nor on the fact that it has been concealed or expressed; that the belief of a juror that he can do justice between the parties can have but little influence in determining his competency; that circumstances may exist which render a relaxation of the rule necessary, but the relaxation when allowed should go no further than the necessity demanded; and that the nearer the approach to absolute freedom from preconceived opinion the nearer is the approach to perfection of the system of trial by jury.

Substantially to the same effect is the case of *Logan* v. *State,* 50 Miss. 269.

In *Brown* v. *State,* 57 Miss. 424, it was held that the intention of the law is that the jury shall come to consideration of the case unaffected by any previous judgment, opinion, or bias either as respects the parties or subject-matter in controversy.

In the case of *Skinner* v. *State,* 53 Miss. 399, it was held that in a murder case a juror is not incompetent because he states on *voir dire* that he has heard the killing talked of by several persons at the time it occurred, but does not think he formed or expresssed an opinion as to his guilt or innocence.

In *Penn* v. *State,* 62 Miss. 450, it was held that the fact that a juror in a capital case had conversed with one of the state's witnesses concerning the case does not render him incompetent if he has no fixed opinion as to the guilt or innocence of the accused.

In *Martin* v. *State,* 98 Miss. 676, 54 So. 148, it was held that a juror was disqualified to sit in a murder case on the ground of holding a preconceived opinion where he stated that, although he did not know that he would hang a white man on a negro's evidence, he would, from what he had heard, give the accused a life sentence anyway.

In a number of cases it has been held that a hypothetical opinion, or one formed upon rumor, subject to be changed by the evidence on the trial, does, not disqualify a person from serving as a juror in the case. *State* v. *Flowers,* Walk, 318, 1 Morris' State Cases, 24; *State* v. *Johnson,* Walk. 392, 1 Morris' State Cases, 32; *King* v. *State,* 5 How. 730, 1 Morris' State Cases, 189; *Nelms* v. *State,* 13 Smedes & M. 500, 53 Am. Dec. 94, 1 Morris' State Cases, 509.

In *Logan* v. *State,* 50 Miss. 269, it was held that, if a juror's opinion is formed on rumors, and upon examination is shown not to be fixed so as to create a bias or prejudice which requires testimony to remove or overcome, such person is a competent juror. But, if the

opinion has been engendered by personal knowledge, or from hearing the witnesses on a former trial, such juror is not competent, although he may claim that it would not influence his verdict, and that he could try the case fairly according to the evidence.

In *Cotton* v. *State,* 31 Miss. 504, 1 Morris' State Cases, 915, it was held that a person who has formed an opinion from common rumor as to the guilt or innocence of the accused which it would require evidence to remove is not an impartial and competent juror, although the juror declares that he feels as free to act in the matter as if he had heard nothing about the case.

In *Ogle* v. *State,* 33 Miss. 383, it was held that the impression that disqualifies must be an impression as to guilt or innocence of the accused, and not an impression in regard to the nature of the transaction on which the charge is based.

In *Shepprie* v. *State,* 79 Miss. 740, 31 So. 416, it was held that one who before the trial heard all the facts of a murder from an eyewitness whom he regarded as truthful, and whose statements he believed, and on them had formed a fixed opinion, is incompetent to try the accused, notwithstanding the above section of the Code.

In *Fugate* v. *State,* 82 Miss. 189, 33 So. 942, it was held that a person who has an opinion about the case, and who cannot say positively that he can try the same as though he had none, and from what he knows could bring any verdict without further evidence, or who has an opinion about the case which it would require strong testimony to remove, is not a competent juror.

In *Gammons* v. *State,* 85 Miss. 103, 37 So. 609, it was held that, under the above section of the Code, providing that a juror shall not be disqualified because he has an opinion if it appear to the satisfaction of the court that he has no bias or feeling or prejudice in the case, and no desire to reach any result in it except that to which the evidence may conduct, a juror is not incompetent who

states on his *voir dire* that he had read of the case, that he has heard rumors, but never heard any of the witnesses, that he has an opinion from what he heard which would require evidence to remove, that, though he has such an opinion, he could give the defendant a fair trial, since the opinion is based upon what he had heard and read, and that he had no bias or prejudice against defendant, and will try him fairly and impartially on the evidence introduced.

In *Evans* v. *State,* 87 Miss. 459, 40 So. 8, it was held under the above section that jurors are competent who have opinions based on rumor which may be removed by evidence, but who have not talked to witnesses and have no prejudice against the accused, and state that they will give him a fair trial on the evidence notwithstanding these rumors.

In *Murphy* v. *State,* 92 Miss. 203, 45 So. 865, a prospective juror admitted on examination that he had heard and read of the case, and had a fixed opinion touching the guilt or innocence of the defendant which would take strong evidence to remove; he was held incompetent although he further stated that he was not interested, and if accepted would be governed by the law and the evidence as presented.

There are many other cases that could be cited and commented on, and a study of which would show that it is an extremely difficult matter to determine the competency of a juror who has formed or expressed an opinion, but who thinks that he can discard the opinion and be governed by the law and the evidence. A study of these decisions will show that the law has varied somewhat according to the personal opinions and habits of thought of the particular judges who constituted the court. It is even more noticeable, in studying the records that come to this court from the different circuits, the view of the different judges as to what makes a competent juror varies considerably. It is, of course, a

judicial question as to whether a jury is fair and impartial, and the trial judge must necessarily first determine this question, and his judgment will not be disturbed, unless it appears clearly that he is wrong. It is therefore important to a defendant whose life, liberty, and honor are involved in the trial of a criminal case that he have full latitude in searching the juror's mind and conscience to determine his exact attitude, both as affecting his legal competency as a juror as an aid in exercising the right of challenges for cause, and also as enabling the defendant or the state to act intelligently in exercising the rights of peremptory challenges. In times of excitement, and sometimes following movements inaugurated to induce people to respond to jury service, and sometimes through improper desire to get on a jury, it is necessary to have a searching examination in which the questions may be propounded rapidly. Every experienced trial lawyer appreciates the fact that at times a defendant is confronted with a serious situation in preventing improper jurors from being impaneled, and the state is likewise seriously confronted sometimes in preventing a jury being made up of designing persons. It is therefore difficult to ever say that the denial of the statutory right secured by the recent act is harmless. The general rule is that the denial of a statutory right will be presumed to be prejudicial. It is difficult to see what results might have flowed from allowing the statutory right, and what results might flow from its refusal.

In *Gibson* v. *State*, 70 Miss. 554, 12 So. 582, the denial of the statutory right secured by section 1496 of the Code of 1906 (section 1254, Hemingway's Code), being then section 1423, Code of 1892, the cause was reversed for the refusal or denial of the right to the defendant. Apparently the court did not stop to consider or weigh whether or not such error was harmful or harmless.

We think the safe rule is to hold that the denial of the statutory right is error for which the judgment will be reversed. See, also, *Funches* v. *State,* 125 Miss. 140, 87 So. 487.

The next question for consideration is whether it was error to admit the confession taken down in writing by the county attorney as stated above. The trial court excluded the confessions in the hotel and in the jail at New Albany, but admitted the confession made in the presence of and taken down by the county attorney. The attorney-general in his brief confesses that it is hard to distinguish this case from *White* v. *State,* 129 Miss. 182, 91 So. 903, 24 A. L. R. 699, and practically concedes that, if the excluded confessions were properly excluded, that the one admitted ought also to have been excluded, but he argues that the trial judge wrongfully excluded the other two. We are unable to agree with the attorney-general that the trial judge was in error in excluding the two. It clearly appears that hope was held out to the defendant that it would be better for him if he made the confession, and it also clearly appears that the defendant was in great fear of mob violence when he made these confessions. We think the confession made to and taken down by the county attorney should have been excluded, under the authority of *White* v. *State, supra;* and also *Banks* v. *State,* 93 Miss. 700, 47 So. 437, and *Durham* v. *State* (Miss.), 47 So. 545.

In the case of *Banks* v. *State,* supra, the court said: "It does not sufficiently appear that the appellant was not acting under the influence of the inducements held out to him the day before to warrant us in concluding that the testimony offered to prove the second confession should have been admitted. In order to make this alleged second confession admissible, it must clearly appear that the second confession was not made under the same improper influence as the first."

In the case before us the confession made and taken down by the county attorney followed within less than an hour the confession to the sheriff and detectives, and, while the county attorney, with commendable fairness, sought to inform the accused that it was not necessary for him to repeat his confession unless he was willing to do so, and that it would be used against him, and that he had no inducements to offer, still we think this does not make it admissible. In the numerous cases that come here involving confessions we frequently find confessions unlawfully obtained speedily followed up by a prosecuting officer or a justice of the peace by another one sought to be made competent by stating to the accused that he is under no obligation to make it, and it will be used against him, or that there is no obligation expressed or implied to aid him in any respect. When a confession is unlawfully obtained the influence which procures it it to be so unlawfully obtained ought to be fully removed in order to make the second one admissible.

We deem it unnecessary to consider the other assignments of error, as they may not appear in the next trial.

For the errors named, the judgment will be reversed, and the cause remanded for a new trial.

*Reversed and remanded.*