MAXWELL, J.,
for the Court:
¶ 1. Over twenty years after being convicted of robbery and sentenced to life imprisonment as a habitual offender, Johnny Ray Magee claimed to have discovered new evidence entitling him to post-conviction relief (PCR). He argues he recently learned his trial had been tainted because a juror had failed to disclose during voir dire her familial relationship with a law enforcement officer allegedly involved in his arrest. The Marion County Circuit Court held an evidentiary hearing and found Magee was not prejudiced by the juror’s failure to divulge that a person she believed to be her fourth cousin was a sheriffs deputy. The circuit judge also determined the juror had no extraneous knowledge about the case. Magee challenges these findings and also contests several of the circuit judge’s evidentiary rulings from the hearing. Finding no reversible error, we affirm.
*74 Facts and Procedural History
¶2. In 1986, a Marion County grand jury returned an indictment charging Ma-gee with armed robbery. The jury found Magee guilty of the lesser-included offense of robbery. Based on his separate prior convictions for burglary and robbery, he was sentenced as a habitual offender to life imprisonment without the possibility of parole. The Mississippi Supreme Court affirmed Magee’s conviction and sentence. See Magee v. State, 542 So.2d 228, 237 (Miss.1989). In 1992, the supreme court dismissed his PCR motion. But in 2009, Magee moved to amend his PCR motion, claiming newly discovered evidence of juror misconduct.
¶ 3. In 2010, the supreme court granted Magee’s motion to amend and directed the circuit court to conduct an evidentiary hearing on Magee’s juror-misconduct claim. The crux of Magee’s post-conviction argument was that he had been denied a fair trial because Judy Ann Echols, a member of the jury at his robbery trial, had not disclosed her familial relationship with a law enforcement officer, despite Magee’s attorney posing the following relevant questions to the venire:
(1) And these first few questions apply to you yourself, your family, and the people you consider to be your close friends. Are any of you or the other people that I have mentioned presently employed as any sort of law enforcement officer, whether it be local, state or federal? Is anybody in that position at this time?
(2) What about in the past, has anybody in your experiences in life so far ever been employed in law enforcement personally? What about your family members or close friends in the past?
(3) Have you yourself or any of your close friends ever been members of any kind of law enforcement association such as the State Sheriffs Association or National Rifle Association or any other group like that?
¶ 4. Though two jurors responded to the questions, Judy Ann did not. Over twenty years later at the evidentiary hearing, Judy Ann testified she believed she was the fourth cousin of Deputy Thomas Echols, who had served as a Marion County Sheriffs Deputy at the time of Magee’s indictment and trial. Judy Ann admitted she had known Deputy Echols and had attended Church with him prior to his death, but she denied ever discussing Ma-gee’s case with him at any time before, or during, Magee’s trial. Judy Ann explained she had not disclosed her relation to Deputy Echols during voir dire because she had misunderstood defense counsel’s questions and was not sure how to conduct herself.
¶ 5. Magee also testified at the eviden-tiary hearing. He believed Deputy Echols and Judy Ann were second, not fourth, cousins. Magee’s sister, Shirlee McLendon, offered similar testimony. Magee further claimed a fellow inmate had recently told him that Judy Ann had learned from Deputy Echols that Magee had robbed the store. Afterwards, Magee maintained that he had called Judy Ann to confront her about the statements. He claimed that during their conversation Judy Ann had admitted discussing his case with Deputy Echols before serving on the jury. Yet notably, Magee did not question her about this alleged conversation during the hearing.
¶ 6. Cass Barnes, the State’s only witness at the evidentiary hearing, had served on the jury with Judy Ann. He testified that he did not recall any improper reference or conduct on Judy Ann’s part during the jury’s deliberations. According to Barnes, there were no improprieties during deliberations and “everything went ... *75 smoothly.” Barnes testified that had any of the jurors acted improperly, he would have advised the circuit judge.
¶ 7. After applying the test articulated in Odom v. State, 355 So.2d 1381, 1383 (Miss.1978), the circuit judge found that Judy Ann had lacked substantial knowledge and understanding of the information sought to be elicited during her voir dire examination and that Magee had suffered no prejudice from her failure to respond. Having found Magee received a fair and impartial trial, the circuit judge denied Magee’s PCR motion. Magee now appeals.
Standard of Review
¶8. We review the denial of a PCR motion after an evidentiary hearing for clear error. Poss v. State, 17 So.3d 167, 169 (¶ 5) (Miss.Ct.App.2009) (citing Johns v. State, 926 So.2d 188, 194 (¶ 29) (Miss.2006)). In doing so, we “must examine the entire record and accept ‘that evidence which supports or reasonably tends to support the findings of fact made below, together with all reasonable inferences which may be drawn therefrom and which favor the [circuit] court’s findings of fact.’ ” Thorson v. State, 76 So.3d 667, 674 (¶ 18) (Miss.2011) (quoting Doss v. State, 19 So.3d 690, 694 (¶5) (Miss.2009)). Deference is given to the circuit judge as the “sole authority for determining credibility of the witnesses.” Mullins v. Ratcliff, 515 So.2d 1183, 1189 (Miss.1987). But we review questions of law de novo. Thorson, 76 So.3d at 674 (¶ 19) (citing Doss, 19 So.3d at 694 (¶ 5)). The burden of proof at an evidentiary hearing in post-conviction relief cases is on the petitioner to show “by a preponderance of the evidence” he or she is entitled to relief. Miss.Code Ann. § 99-39-23(7) (Supp.2012).
Discussion
¶ 9. On appeal, Magee claims the circuit judge erred in (1) applying the Odom test (2) allowing the State to ask Judy Ann leading questions, (3) limiting Magee’s testimony to relevant matters, (4) permitting Barnes to testify, and (5) allowing the State to ask Barnes a leading question on direct examination and permitting Barnes to offer speculative testimony.
1. The Odom Test
¶ 10. In Odom, 355 So.2d at 1383, the supreme court established a test for evaluating whether a juror’s failure to respond to a question during voir dire prejudices the defendant’s right to a fair trial:
[W]here ... a prospective juror in a criminal case fails to respond to a relevant, direct, and unambiguous question presented by defense counsel on voir dire, although having knowledge of the information sought to be elicited, the trial court should, upon motion [a] for a new trial, determine [ (1) ] whether the question propounded to the juror was ... relevant to the voir dire examination; (2) whether [the question] was unambiguous; and (3) whether the juror had substantial knowledge of the information sought to be elicited. If the trial court’s determination of these inquiries is in the affirmative, the court should then determine if prejudice to the defendant in selecting the jury reasonably could be inferred from the juror’s failure to respond. If prejudice reasonably could be inferred, then a new trial should be ordered.
(Footnote omitted).
¶ 11. There is no “precise formula ... for answering these three questions, but rather the trial court must make an ad hoc determination based on the facts before it.” Sewell v. State, 721 So.2d 129, 137 (¶44) (Miss.1998) (citing Odom, 355 So.2d at 1383).
*76 ¶ 12. In Odom, the defense lawyer asked if any members of the venire were closely related to a law enforcement officer. Odom, 355 So.2d at 1382. One juror, in particular, remained silent. Id. Evidence at a post-trial hearing revealed that the silent juror’s brother was, in fact, a police officer in the community where the case had been investigated and tried. Id. On appeal, the supreme court found the juror’s failure to respond to the question had an adverse effect on the defendant’s right to challenge the juror peremptorily. Id.
¶ 13. Here, the circuit judge applied the test articulated in Odom' and found Magee had failed to satisfy its third prong. While the judge determined Ma-gee’s questions were relevant and unambiguous, he found it was not clear that Judy Ann had “substantial knowledge and understanding of the information sought” by defense counsel. As the judge put it, her understanding of “the degree of kinship” between herself and Deputy Echols “was distant to say the least.” The judge also noted Judy Ann’s testimony that she was somewhat unsure of “how to conduct herself.” The circuit judge distinguished Magee’s case from Odom because of “the vast differences in kinship between siblings and fourth cousins.” Based on the markedly different relationships, the judge reasoned “defense counsel in Odom would have been significantly more alerted” by a brother working in local law enforcement than Magee’s counsel would have been by a distant cousin. We find it worth mentioning that Magee’s attorney did not challenge, either peremptorily or for cause, two jurors who had disclosed their brother-in-laws were employed by law enforcement, one of whom worked for the local police department. Indeed, both of these venire members ultimately served on Ma-gee’s jury.
¶ 14. We also point out that “persons involved in law enforcement are not per se excluded from jury service.” Avera v. State, 761 So.2d 900, 906 (¶ 21) (Miss.Ct.App.2000); see also Walker v. State, 671 So.2d 581, 624 (Miss.1995); Mhoon v. State, 464 So.2d 77, 81 (Miss.1985); Porter v. State, 749 So.2d 250, 256 (¶ 19) (Miss.Ct.App.1999). While Magee provided an affidavit from his trial attorney attesting he would have sought to exclude Judy Ann had he known she was related by blood or marriage to an officer involved in the investigation, Magee offered no evidence at his post-conviction hearing of Deputy Echols’s actual involvement in his investigation. The circuit judge noted Judy Ann’s later testimony that “she had never discussed the nature of Deputy Echols’s work with him, let alone any details regarding [Magee’s] case.” And he determined that, had Judy Ann actually responded during voir dire similarly to her testimony at the evidentiary hearing, “there would have been no probability of her being excused.”
¶ 15. Considering the broad discretion given circuit judges in employing the Odom test, our supreme court has explained “no firm, unbending rule can be laid down that would control every situation that might arise on the voir dire of prospective jurors.” Odom, 355 So.2d at 1383. “It is, of course, a judicial question as to whether a jury is fair and impartial^] and the court’s judgment will not be disturbed unless it appears clearly that it is wrong.” Id. (citing Jones v. State, 133 Miss. 684, 711-13, 98 So. 150, 154-55 (1923)). After reviewing the record, we cannot say the circuit court’s decision to deny Magee’s motion was clearly wrong. There was evidence that Judy Ann perhaps misunderstood the questions during voir dire. And her misunderstanding was attributable, at least in part, to her belief *77 (perhaps a mistaken belief) that Deputy Echols was her fourth cousin and, therefore, not a “family member” or “close Mend” for purposes of defense counsel’s questions.
¶ 16. We find the record supports the circuit court’s decision that Judy Ann’s failure to respond did not prejudice Ma-gee’s right to a fair trial. Judy Ann denied any conversations with Deputy Echols about the case or any knowledge of extraneous evidence. And Barnes, who now serves as Marion County Chancery Clerk, and who was also a member of Magee’s jury, testified that he did not recall Judy Ann making any inappropriate references during the deliberation process. He explained that if he had known of any misconduct, he would have reported it to the circuit judge. Magee offered no evidence to rebut Barnes’s testimony. Based on the evidence before the circuit court, we find the judge’s decision to deny Magee’s PCR motion was not clearly erroneous.
2. The State’s Leading Questioning of Judy Echols
¶ 17. Magee next argues the circuit court erred in allowing the State to ask Judy Ann leading questions on cross-examination.
¶ 18. A leading question is “one that suggests to the witness the specific answer desired by the examining attorney.” Tanner v. State, 764 So.2d 385, 405 (¶ 58) (Miss.2000) (quoting Clemons v. State, 732 So.2d 883, 889 (¶25) (Miss.1999)). “[T]he decision to allow leading questions rests within the sound discretion of the trial court....” Parks v. State, 930 So.2d 383, 387 (¶9) (Miss.2006) (citing McFarland v. State, 707 So.2d 166, 175 (¶ 30) (Miss.1998)). “Unless there has been a manifest abuse of discretion resulting in injury to the complaining party, we will not reverse the decision. This is because the harm caused is usually speculative[,] ... and only the trial court was able to observe the demeanor of the witness to determine the harm.” Mosby v. State, 749 So.2d 1090, 1093 (¶ 9) (Miss.Ct.App.1999) (citing Whitlock v. State, 419 So.2d 200, 203 (Miss.1982)).
¶ 19. Ordinarily, leading questions are “permitted on cross-examination.” M.R.E. 611(c). But the comments to Rule 611 indicate leading questions may not be proper when the cross-examination is in form only. See M.R.E. 611(c) cmt.; see also Walker v. State, 962 So.2d 39, 45 (¶ 23) (Miss.Ct.App.2006). For instance, when a party is cross-examined by his own counsel after being called by the opponent, the cross-examination is in form only. See M.R.E. 611(c) cmt.
¶ 20. Magee complains about the following questions asked during the State’s examination of Judy Ann:
Q: Ms. Echols, I just have a few questions for you. When you went back to the jury room to discuss this case about Johnny Ray Magee, did you tell any of the other fellow jurors that you were the fourth cousin of a sheriffs deputy?
A: No.
Q: Mr. Kuykendall asked you if you had occasion to talk with [Deputy Echols] about his law enforcement activities and you said no. Did you talk with [Deputy] Echols about this particular case involving Johnny Ray Magee?
A: No.
Q: Were you in the presence of [Deputy] Echols when he was discussing . the case and you overheard [sic] him say anything?
A: No.
*78 Q: So you had no contact or communication with [Deputy] Echols about the Johnny Ray Magee case?
A: No.
Q: And you didn’t — whether or not you were kin to [Deputy] Echols, you didn’t bring that in to the jury and tell the other jury members that you were fourth cousin or distant relation or some relation to [Deputy] Echols?
A: No, I didn’t.
Q: Did anything about what you knew about Johnny Ray Magee that you knew at the time of the trial influence you so that you had some prejudice or bias in the case?
A: No.
Q: Either for Johnny Ray Magee or against him?
A: No.
¶ 21. When considering the propriety of these questions, we need not linger on whether the State’s examination of Judy was in form only, because Magee did not object to the State’s questioning of Judy Ann. Thus, he waived any challenge to the State’s method of inquiry. Still, while Magee’s waiver is undisputed, Mississippi’s evidentiary rules allow notice to be taken of “plain errors affecting substantial rights although they were not brought to the attention of the court.” M.R.E. 103(d). However, a legal error does not mandate reversal under plain-error review unless it is “so fundamental that it generates a miscarriage of justice.” Morgan v. State, 793 So.2d 615, 617 (Miss.2001) (quoting Gray v. State, 549 So.2d 1316, 1321 (Miss.1989)).
¶ 22. Though several of the complained-of questions could be classified as leading, the circuit judge has some discretion to allow leading questions, particularly when the manner of inquiry is not challenged. And even if it was technically error to allow some of the challenged questions, we do not find the manner of examination resulted in a miscarriage of justice or in any way denied Magee a fair and impartial hearing.
3. Limiting Magee’s Testimony to Relevant Matters
¶ 23. Magee next argues the circuit judge abused his discretion by limiting the scope of his testimony. Magee cites no authority supporting this assignment of error. And there is no factual support in the record to find in his favor.
¶24. Mississippi Rule of Evidence 611(a) allows a court to exercise reasonable control over the presentation of evidence to avoid needless consumption of time. The circuit judge allowed Magee to testify at length during the hearing. He intervened only to limit Magee’s testimony to relevant matters and to instruct Magee not to rehash every argument within his petition. We find the circuit judge’s actions were reasonable and are unable to say he abused his discretion in limiting Magee’s testimony to relevant matters.
4. Allowing Barnes to Testify
¶25. Magee also suggests the circuit court erred in allowing Barnes to testify. As support, Magee cites Rule 9.04(I)(l)-(2) of the Uniform Rules of Circuit and County Court, which provides:
If during the course of trial, the prosecution attempts to introduce evidence which has not been timely disclosed to the defense as required by these rules, and the defense objects to the introduction for that reason, the court shall act as follows:
1. Grant the defense a reasonable opportunity to interview the newly discovered witness ...; and
2. If, after such opportunity, the defense claims unfair surprise or undue prejudice and seeks a continu- *79 anee or mistrial, the court shall, in the interest of justice and absent unusual circumstances, exclude the evidence or grant a continuance for a period of time reasonably necessary for the defense to meet the non-disclosed evidence or grant a mistrial.
Magee concedes he did not preserve an objection by claiming unfair surprise. And once more he asks this court to invoke the plain-error rule.
¶ 26. The record indicates that while Magee’s post-conviction counsel knew the State might call Barnes as a witness and did not claim unfair surprise, he did object to the lack of a subpoena and the court granting a brief recess before Barnes’s testimony. But our review shows Magee had sufficient opportunity to prepare to cross-examine Barnes. Thus, we find the circuit court’s decision to allow Barnes to testify did not affect Magee’s substantial rights.
5. The State’s Questioning of Barnes
¶ 27. Magee finally argues the circuit court erred in allowing the State to ask Barnes a leading question and permitting him to give speculative testimony. Magee objected when the State asked Barnes: “Do you recall whether anybody said, “Well, I’m related the sheriffs deputy on that case[,] and I know all about it[,]’ or anything of that sort?” The circuit court overruled Magee’s objection and allowed Barnes to respond.
¶ 28. Although the question is arguably leading, “[t]rial courts are given great discretion in permitting the use of such questions. ...” Tanner, 764 So.2d at 405 (¶ 58). The circuit court was in the best position to judge the necessity of the question, and we do not find he abused his discretion in allowing it.
¶ 29. Lastly, Magee insists the circuit court erred in overruling his objection to the State’s question about what Barnes would have done if he had become aware of an impropriety during jury deliberations:
Q: What would you as a member of the jury have done if one of the members of the jury had done something improper like mak[ing]e an improper reference to a relationship to a deputy or having special knowledge about the case, what would you as a jury [member] have done?
Mr. Kuykendall: Your Honor, I want to object. It’s calling for speculation on the witness’s behalf, something that he [would] have done 28 years ago.
The Court: I’ll overrule. You can cross examine him.
¶ 30. We again note the Mississippi Rules of Evidence afford circuit courts broad discretion with respect to witness testimony and the admissibility of evidence. While this particular inquiry called for speculation, Magee had alleged juror misconduct, which the question clearly touched on. Based on the circuit court’s discretion in handling evidentiary matters, we do not find Magee is entitled to reversal on this ground.
¶ 81. THE JUDGMENT OF THE CIRCUIT COURT OF MARION COUNTY DENYING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO MARION COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, RUSSELL AND FAIR, JJ., CONCUR. CARLTON, J„ NOT PARTICIPATING.